Jones, J.
We agree with the majority at the Appellate Division that there was warrant in this record for the jury verdict that the parties here had agreed to submit the dispute which has arisen between them to arbitration.
This litigation arises out of an agreement between the parties for the sale and purchase of zinc. When the zinc was not delivered, the purchaser commenced an arbitration proceeding to recover damages for the alleged default of the seller. Thereupon the seller instituted the present proceeding to stay arbitration and to vacate the demand therefor. Supreme Court ordered a trial of all issues raised by the petition. After such plenary trial, the jury unanimously found for the purchaser. Judgment was thereupon entered denying the application for a stay of arbitration. The Appellate Division affirmed, as do we.
Viewing the evidence before the jury in the light most favorable to the successful party, as we must, we conclude that there was sufficient evidence, as a matter of law, to sustain each of the three conclusions reached by the jury in response to specific questions submitted to them by the trial court, and thus to sustain the verdict in favor of the pur *380 chaser. Appellant could succeed on this appeal only if it appears that as a matter of law there was insufficient evidence to support the jury verdict. Nor was reversible error otherwise committed on the trial.
The parties to this controversy have been doing business together for some 15 years. There was evidence that it was the custom of the trade for agreements for the- sale of metals routinely to be made orally, by telephone, and thereafter confirmed by delivery of purchase orders. Five prior purchase orders of Intsel, dated June 14, 1971, May 4, 1972, December 4, 1972, December 21, 1972, and May 5, 1973, respectively, were received in evidence. Each covered a purchase of zinc, and each contained an arbitration provision.
On Friday, September 21, 1973 Mr. Kornblum, a member of the selling partnership, here appellant, telephoned Mr. Bauer, manager of sales in the nonferrous metals division óf Intsel, the purchasing corporation, to inform him that the partnership had a possibility of obtaining 250 tons of prime western zinc. Mr. Bauer expressed an interest and asked what price would be required to purchase the zinc. When Mr. Kornblum responded that 32 cents per pound would be needed, Mr. Bauer made a firm bid at that price for 250 tons. Mr. Kornblum then told Mr. Bauer that he would advise him whether he was successful in obtaining the zinc. Later in the day Mr. Kornblum telephoned for Mr. Bauer in consequence of which call Mr. Bauer made an entry in his daily log that Intsel had purchased the 250 tons of zinc at 32 cents per pound. Mr. Bauer then caused a purchase order to" be prepared and mailed that aftrnoon to Kornblum covering the transaction. That purchase order for the first time included all the essential terms of the transaction. In addition to its other terms it specifically referred on its face to the arbitration clause set forth in full on the reverse side as follows: "9. Any controversy arising under or in relation to this agreement or any modification thereof shall be settled by arbitration in the City of New York in accordance with the Arbitration Laws of the State of New York and the Rules then obtaining of the American Arbitration Association, and judgment on the award may be entered in any court, State or Federal, having jurisdiction.” For the first time, the purchase order also specified that the zinc was to be strapped in bundles.
After the weekend, on Monday, September 24, 1973, Mr. Bauer telephoned Mr. Kornblum to acknowledge receipt of the *381 latter’s Friday afternoon call and Messrs. Bauer and Kornblum "agreed during the conversation that we had a firm transaction for 250 tons of prime western zinc”.
Later in the day, Mr. Kornblum, on receipt of the purchase order which had been mailed out by Mr. Bauer the previous Friday afternoon, telephoned Mr. Bauer to request a change in the payment terms. Nothing was said as to the arbitration provision, as to the provision that the zinc should be strapped in bundles, or as to the other provisions set out in the purchase offer. Mr. Bauer thereupon agreed to the requested change in payment terms. A second purchase offer was prepared to reflect this change and was mailed to and received by Kornblum without objection.
Some days later Mr. Kornblum telephoned to Mr. Bauer to ask whether it would be acceptable to deliver the zinc in drums instead of slabs strapped in bundles. Since Intsel had resold the zinc, Mr. Bauer checked with Intsel’s customer and then told Mr. Kornblum that the zinc could not be in drums but would have to be in slabs, as had been agreed. Within the next few days, Mr. Kornblum telephoned Mr. Bauer and confirmed that the zinc would be delivered in slab form and stated that it would be available for pickup on October 18, 1973.
On October 18, Mr. Bauer called Mr. Kornblum to make arrangements to pick up the zinc, at which point Mr. Kornblum advised Mr. Bauer that, despite his earlier assurances, delivery could not be made in slabs but only in drums, which was not acceptable to Intsel. No zinc was ever delivered and in consequence Intsel commenced an arbitration proceeding to recover damages from Kornblum. The present, action ensued.
After trial the jury unanimously answered each of the following questions in the affirmative and the Trial Judge directed entry of judgment denying appellant Kornblum’s application to stay the arbitration:
1. Has the respondent, Intsel Corporation, sustained the burden of proof that the parties reached an oral agreement for the sale by S. Kornblum Metals Co., to Intsel Corporation of 250 tons of zinc in solid form (as distinguished from zinc in liquid form)?*
2. Has the respondent, Intsel Corporation, sustained the *382 burden of proof of a sale without the requirement of a purchase order signed by both parties?
3. Has the respondent, Intsel Corporation, sustained the burden of proof that it was the intention of the parties, because of their conduct in this instance and their past dealings and custom to have any controversy arising out of their agreement submitted to arbitration?
We conclude that there was sufficient evidence here to warrant the jury finding that the original oral contract, finally confirmed on Monday, September 24, included among its provisions the arbitration clause set forth in writing in the Intsel purchase offer. The conversations between the parties of the prior Friday afternoon culminated in the agreement reached on Monday. There was evidence that the sale and purchase of 250 tons of zinc were confirmed in general in the morning telephone conversation between Mr. Bauer and Mr. Kornblum. This was further substantiated by Mr. Kornblum’s later call on Monday in which, with the purchase offer, including the written arbitration clause, in front of him, he confirmed the agreement but requested a single modification as to terms of payment. On one view, with acceptance of that modification there came into full and legally effective existence a contract between the parties. Although there are other views which could be taken of the proof in this case, there certainly was evidence from which the jury could have found that an oral contract was made by the parties with all terms and conditions fully understood by each at the conclusion of the second telephone conversation between Mr. Kornblum and Mr. Bauer on Monday, September 24.
This is not an instance in which it was sought, subsequent to the completion of the contract, to add an arbitration provision as an additional term to a pre-existing contract. The jury was certainly entitled on this record to conclude that the arbitration provision was one of the terms of the contract when initially made by the parties.
Appellant also contends that the trial court erroneously declined its request to charge in effect that mere receipt of a purchase order including an arbitration clause, without returning it, does not constitute an agreement to arbitrate unless preceded by an oral agreement. We find no error. The requested charge, while perhaps accurate in the abstract, failed to take into account the evidence in this case and was *383 predicated here on an erroneous analysis of the legal issues presented on this record.
We have examined appellant’s other contentions and find them to be without merit.
Accordingly, the order of the Appellate Division should be affirmed.
Chief Judge Breitel and Judges Jasen, Gabrielli, Wachtler, Fuchsberg and Cooke concur.
Order affirmed, with costs.

 Unless the jury answered the first question in the affirmative it was instructed not to consider the other questions.