CARMEN CALABRESE, Respondent, v COUNTY OF ONTARIO, Appellant.
Memorandum: Defendant

County of Ontario seeks to set aside a jury verdict awarding plaintiff $81,000 on a contract. Plaintiff Calabrese entered into a contract with the County of Ontario to operate and restore its sanitary landfill. Soon after Calabrese began performing under the contract, a dispute arose over the payment terms. Calabrese claimed that his minimum guaranteed monthly payment was $9,000, while the county took the position that the minimum monthly payment was $4,500, that is, 90 cents per cubic yard for a minimum of 5,000 yards. The dispute is grounded in the different interpretation each gives to the following term in plaintiff's bid proposal: "between 0 and 5,000 cubic yards per month for 4,500.00 dollars and 90 cents per cubic yard (the owner guarantees payment for a minimum of 5,000 cubic yards per month whether or not it arrives at the landfill.)" Because of the ambiguity of that term, the trial court ruled that the parties could offer proof as to the meaning and intent of the parties. The testimony of plaintiff and his former partner indicated that their bid was intended to be a $4,500 monthly guarantee plus 90 cents per cubic yard for the first 5,000 cubic yards, or a total of $1.80 per cubic yard for the first 5,000 yards. They showed further that an estimate done for the county by an engineering firm indicated that it would cost the county $1.82 per cubic yard to perform the work itself. The evidence showed that even though the payment term was questioned at the bid opening, no one from the county ever asked Calabrese to clarify its meaning. Plaintiff testified that he did not become aware of the differing interpretations of the payment term until February 1975 when Joesph Carver, Ontario County Environmental Coordinator, presented him with a claim voucher for his signature. Seeing that the voucher was for $4,500, Calabrese asked Carver about the 90 cents per yard guarantee, but Carver told him that $4,500 was all he would get. Plaintiff testified that he signed that voucher and subsequent monthly vouchers for $4,500 because if he had not signed them, he would not have been paid and would not have been able to continue operating. He stated that he repeatedly asked the county about the additional $4,500 but admitted that he never entered a written protest until August of 1975, when he made a written protest on the voucher. Witnesses for the county testified that they had spoken with plaintiff at the time the bid was entered, that he had stated that the $4,500 figure represented 90 cents per cubic yard times 5,000 yards and that they understood that that was the bid: 90 cents per cubic yard. The county also introduced a document entitled "Voucher Payment Procedure" which contained a notation that the minimum payment due the operator (i.e., plaintiff) was $4,500 and plaintiff admitted that he had received a copy of that document when he began performance of the contract. The county can prevail here "only if it appears that as a matter of law there was insufficient evidence to support the jury verdict." (*Matter of Kornblum Metals Co. v Instel Corp.,* 38 NY2d 376, 380.) "To justify setting aside the jury verdict we must be of the opinion that the verdict is palpably wrong and the evidence so preponderant in defendants' favor that it is clear that the jury did not reach its conclusion on a fair interpretation of the evidence." (*Marshall v Mastodon,* 51 AD2d 21, 23; see, also, *Blunt v Zinni,* 32 AD2d 882, affd 27 NY2d 521.) The evidence before the jury must be viewed in the light most favorable to the successful party. (*Matter of Kornblum Metals Co. v Instel Corp., supra; Commisso v Meeker,* 8 NY2d 109.) Viewing the evidence in that light, the jury's verdict cannot be set aside. There was ample evidence which, if believed by the jury, would justify its verdict. The language of the bid proposal itself is certainly ambiguous and, if anything, the use of the conjunction "and" implies that the "90 cents per cubic yard" term was in addition to the

"$4,500" preceding it. The county contends that the bid could not have been intended to mean $4,500 plus 90 cents per cubic yard as that meaning would be inconsistent with the language of subsequent portions of the bid proposal. Portions of the next entries read as follows: "Between 5000 and 6000 cubic yards per month for 5280.00 dollars and 88 cents per cubic yard." "Between 6000 and 7000 cubic yards per month for 6220.00 dollars and 86 cents per cubic yard." When queried about these terms on cross-examination, plaintiff's partner, Cowles, testified that he intended the $4,500 to be a base guarantee, regardless of amounts delivered. It could be inferred from his testimony that the intent of the bid proposal was that $4,500 be a base to which the other sums would be added depending on the amount delivered. With respect to the county's claim that the plaintiff never entered a written protest to the vouchers submitted to him, the jury evidently found his explanation a reasonable one. They apparently accepted his statement that he verbally complained repeatedly and certainly could have found it significant that the county prepared the vouchers and inserted the amount, not the plaintiff. Inasmuch as the jury could fairly have interpreted the evidence in favor of the plaintiff, there is no basis to set aside its verdict. "[W]hen a jury reaches a determination upon an interpretation of the facts, which are concededly in their sphere, a court may not set aside their verdict simply because the court would draw conclusions different from those of the jury." (*Yerdon v Baldwinsville Academy & Cent. School Dist.,* 50 AD2d 714, 715.) (Appeal from judgment of Ontario Supreme Court—breach of contract.) Present—Moule, J. P., Cardamone, Hancock, Denman and Witmer, JJ.