■ LOUIS N. PICCIANO AND SON et al., Appellants-Respondents, v OLYMPIC CONSTRUCTION COMPANY, INC., Respondent-Appellant, and AETNA CASUALTY AND SURETY COMPANY, Respondent.—Per Curiam. Cross appeals (1) from a judgment of the Supreme Court in favor of defendants, entered June 6, 1984 in Essex County, upon a verdict rendered at Trial Term (Mercure, J.), and (2) from an order of said court, entered June 6, 1984 in Essex County, which computed the amount of interest on the verdict.

This litigation involves rival breach of contract actions by a general contractor and its subcontractor. In the summer of 1977, the State Department of Environmental Conservation (DEC) entered into three contracts with plaintiff Louis N. Picciano and Son (Picciano). Two of the contracts required Picciano to install machinery and piping for snowmaking at Whiteface Mountain in Essex County and at Gore Mountain in Warren County; the third involved Picciano's construction of sanitary facilities at Whiteface Mountain. Each contract bestowed broad power on DEC's engineer to determine the meaning of specifications and whether the work performed conformed to the contract. Picciano was obligated to bring nonconforming work up to the engineer's standards.

Picciano in turn entered into three separate subcontracts with defendant Olympic Construction Company, Inc. (Olympic). By those agreements, Olympic undertook to excavate trenches on Whiteface Mountain and Gore Mountain in which Picciano would lay pipe, to backfill those trenches and to build a water supply and waste water disposal system at Whiteface Mountain. The subcontracts provided for monthly payments to Olympic and contained clauses requiring that its work conform to the prime contracts between DEC and Picciano.

Olympic commenced excavation at Whiteface Mountain in June of 1977. The prime contracts provided that the trenches in which Picciano laid pipe were to afford 3 1/2 feet of cover, except in areas of continuous rock where one foot of cover sufficed. Representatives of Picciano and DEC inspected the work daily and, but for minor disputes which were resolved, accepted Olympic's work.

Nevertheless, on September 10, 1977, DEC shut down the Whiteface Mountain project and demanded that all pipe,

including that previously positioned and backfilled, be set at a depth of 3 1/2 feet. Picciano and Olympic both objected vehemently. The next day, Louis Picciano and Bernard Gurney, on behalf of Picciano, participated in a conference telephone call with Leroy Miller and Gary Stowell, Olympic's vice-president and secretary-treasurer, respectively. It is undisputed that Picciano demanded that Olympic immediately recruit additional men and machinery to comply with DEC's directive that the trenches be redone and that Olympic balked, asserting that it was financially unable to do so. Olympic's two representatives testified at trial that Louis Picciano then promised, "I can get the money, you get the men and equipment." Picciano, on the other hand, contends that it only agreed to pay for removing and relaying the pipe, work not described in the original contracts, and that it did not undertake to pay Olympic for all the extra work which redigging the trenches entailed.

Olympic then proceeded to do the work ordered by DEC, but Picciano, believing it was not obliged to, refused to pay Olympic for all the rework and also did no make full payment on the subcontracts; as a consequence, Olympic encountered severe cash-flow problems. In early October, Olympic threatened to leave the job site if Picciano continued to fail to honor its requisitions for payment. To get funds, Olympic, on October 15, 1977, executed the following "Memorandum of Understanding" drafted by Picciano's attorney:

"Whereas, Olympic needs money to continue to perform its work under its contract with Picciano, it is hereby agreed between the parties hereto that:

"1. Picciano will pay Olympic for the equipment and operator costs of removing and relaying the pipelines limited to the required "rework' based on paper, verified requisitions approved by Picciano for "rework' performed during 1977.

"2. It is expressly understood and agreed by the parties hereto that these payments are being made without admission of fault or liability on the part of either party and without prejudice to pursue any and all remedies available to either party in the future.

"3. Olympic agrees to proceed to perform its work under its contract with Picciano, immediately." Thereafter, Picciano issued several joint checks to Olympic and its suppliers, but payments to Olympic were not forthcoming. On December 5, 1977, because of inclement weather and lack of compensation, Olympic discontinued working. Evidence introduced at trial

indicated that although Olympic had completed 98% of the Gore Mountain project and only seeding and other small details remained unfinished on the Whiteface Mountain sanitary contract, Olympic had not been paid in full on these projects either. During the winter months, each party charged the other with breaching the contracts and codefendant Aetna Casualty and Surety Company rejected Picciano's claim that, as surety for Olympic, it was liable to Picciano. The following spring, an interrelated company of Picciano completed all of the subcontracts.

Picciano then instituted suit for breach of contract, alleging that Olympic was bound under the subcontracts to perform the rework regardless of whether DEC's order to do so was erroneous. Olympic countersued, charging that Picciano's failure to pay for the rework breached the oral contract reached during the telephone conference on September 11, 1977. The actions were then consolidated and tried before a jury, which rendered a unanimous verdict of no cause of action on Picciano's claim and awarded Olympic damages totaling $208,782.54; when the verdict, which was in the form of a questionnaire agreed upon by the court and counsel, was announced, the forelady observed that no award for lost profits was being made on the Whiteface Mountain snowmaking contract. Picciano's motion to set aside the verdict and for related relief was denied as was Olympic's motion to have interest awarded at the legal rate and computed from January 1, 1978, the date of breach, rather than June 1981, the date of payment. These cross appeals followed.

Initially, it should be noted that we are obliged to view the evidence in the light most favorable to the successful party (*Matter of Kornblum Metals Co. v Intsel Corp.,* 38 NY2d 376, 379) and that a jury verdict is not to be disturbed unless it "cannot be supported by any fair interpretation of the evidence" (*Palermo v Gambitsky,* 92 AD2d 1005, 1006; *see also, Bechard v Eisinger,* 105 AD2d 939, 940-941; *Walsh v Morris,* 88 AD2d 673).

Here, the evidence warranted the jury's determination that Olympic had satisfactorily performed its obligations under the subcontracts until September 10, 1977. Furthermore, the jury's conclusion that an oral agreement, for which there was valid consideration, was entered into on September 11, 1977 was also rationally supportable, for there was ample evidence that the prime contract allowed for trenching of one foot in continuous rock; that, despite this, DEC's engineer unilaterally demanded a depth of 3 1/2 feet on all pipe; and the view

of Olympic's expert that this order issued by the State's engineer was unauthorized and nonbinding (*see, Davis, Inc. v Merritt-Chapman & Scott Corp.,* 27 AD2d 114, *affd* 23 NY2d 872). Olympic, as a consequence, had no obligation to perform the rework and its promise to do so constituted valid consideration for the oral contract of September 11, 1977. The jury could also have found the requisite consideration in the fact that Olympic substantially enlarged its work force at the direct urging of Picciano and in exchange for the latter's promise to compensate Olympic for the expense involved.

Nor is Picciano's claim that the oral contract is void for indefiniteness convincing. The evidence establishes that the parties contemplated that Picciano would pay Olympic for rework at the same hourly rate it paid Olympic for "extra" work performed during the course of the subcontracts, and permits the inference that the rework was to be processed in the same manner as extra work. In particular, there was evidence that Picciano advised Olympic to keep hourly records on the equipment and bill it on a time and materials basis. The fact that, one month after the oral agreement was arrived at, Olympic asked to be paid for rework completed to that point lends credence to Olympic's contention that Picciano was to pay it at least on a monthly basis, as Picciano had been doing pursuant to the written contracts. On this record, we find it not unreasonable for the jury to have concluded that Picciano's failure to compensate Olympic for the rework was a breach of the oral contract and that Olympic's refusal to continue working without compensation was justified. Similarly, Picciano's failure to pay Olympic in compliance with the subcontracts constituted a breach thereof.

As for Picciano's argument that DEC's withholding of payments for rework from Picciano relieved Picciano of its duty to compensate Olympic, that thesis lacks support in the various contracts and the pertinent case law (*see, Schuler-Haas Elec. Corp. v Aetna Cas. & Sur. Co.,* 49 AD2d 60, *affd* 40 NY2d 883).

Picciano also urges that Olympic may not recover for losses which it might have mitigated by reasonable effort and expenditure. Specifically, it maintains that had Olympic rebilled 4,700 linear feet of work to rock excavation rather than regular excavation, Picciano's reimbursement from the State would have been at the higher rate for rock excavation. This argument overlooks evidence that Picciano asked Olympic to bill not by the linear foot, in which case the designation of the type of excavation was appropriate, but on an hourly time and

materials basis. Moreover, Picciano had the opportunity to review and correct Olympic's bills. We have examined the other points advanced on Picciano's behalf and find them equally unavailing.

There is merit, however, to Olympic's argument that the jury's failure to award lost profits consequent upon Picciano's breach is against the weight of the evidence. As Judge Cardozo declared in *Lieberman v Templar Motor Co.* (236 NY 139, 149), "[d]amages, if recoverable, include gains prevented". Proof of "some adequate basis for computing the amount" of lost profits warrants recovery (*Plant Planners v Pollock,* 60 NY2d 779, 780, *affg* 91 AD2d 1017). At trial, Olympic introduced proof that it lost profits as a result of Picciano's breach of the Whiteface Mountain subcontract. The amount of that loss was and is disputed. Given the determination that Picciano breached this contract, the jury's express denial of any recovery for lost profits is unsupportable. Remittal for a new trial as to those damages alone is, therefore, appropriate (*see, Manniello v Dea,* 92 AD2d 426).

Lastly, we perceive no error in the trial court's computation of interest on the damages awarded to Olympic. It was within the court's discretion not to award interest on the equitable claims at the prime rate (CPLR 5001), but at the statutory interest rate. In determining both the interest rate and the dates the various damages to Olympic arose, the trial court did not act imprudently.

Judgment modified, on the law, with costs to Olympic Construction Company, Inc., by reversing so much thereof as denied Olympic Construction Company, Inc., damages for lost profits; matter remitted to Trial Term for further proceedings not inconsistent herewith; and, as so modified, affirmed.

Order affirmed, with costs to Olympic Construction Company, Inc. Kane, J. P., Main, Mikoll, Yesawich, Jr., and Harvey, JJ., concur.