ZELMA KASZOVITZ et al., Respondents, v MARTIN WEISZMAN, Appellant, et al., Defendant. (And Another Title.)

Second Department, September 3, 1985

#### APPEARANCES OF COUNSEL

*William A. Scorzari, P. C.* (*Stanley E. Orzechowski* of counsel), for appellant.

*Feder, Kaszovitz, Isaacson, Weber & Skala* (*Alvin M. Feder* and *Richard J. Gottlieb* of counsel), for respondents.

#### OPINION OF THE COURT

Per Curiam.

This is an action to recover for personal injuries allegedly sustained by plaintiff Zelma Kaszovitz, on July 28, 1978. Mrs. Kaszovitz alleges that she was injured during a fall on the public sidewalk abutting the defendants Weiszmans' residence at 1416 56th Street, Brooklyn, New York. On September 7, 1978, plaintiff Zelma Kaszovitz and her husband, William Kaszovitz, filed a claim against the City of New York in connection with the alleged defective condition of the public sidewalk and her claimed injuries.

Thereafter, in January of 1980, plaintiffs instituted an action against the City of New York. The City of New York served its

answer in or about October of 1981. In February of 1981, two and a half years after the incident and more than one year after commencement of the action against the City of New York, the plaintiffs instituted a similar action against defendants Martin and Esther Weiszman. In their verified answer these defendants asserted the following second affirmative defense: "Lack of Jurisdiction in that the defendants were not served in conformity with the rules and regulations of the CPLR".

Plaintiffs never moved to strike this defense. On May 14, 1982, plaintiffs' actions against the defendants Weiszman and the City of New York were consolidated. In May 1983, the City of New York moved for summary judgment dismissing the plaintiffs' complaint against it upon the ground that plaintiffs had failed to commence their action within the applicable Statute of Limitations period of 1 year and 90 days (General Municipal Law § 50-i). On November 29, 1983, the motion was granted and the action as against the Weiszmans was assigned to a Trial Part.

Prior to the commencement of the trial, plaintiffs conceded that the named defendant Esther Weiszman was not served and that no action was maintainable as against her and a traverse hearing was conducted to determine the issue of service on defendant Martin Weiszman. The only evidence offered by the plaintiffs to support their claim of valid in personam jurisdiction over defendant Martin Weiszman was the affidavit of the process server. The process server was not called to testify despite defendant Martin Weiszman's demand for his production, and no excuse was offered for plaintiffs' failure to produce him for cross-examination. The affidavit in question was an affidavit of substituted service of summons. It stated that the process server had appeared at the Weiszmans' home on Wednesday, February 18, 1981, at 3:20 P.M., Friday, February 20, 1981, at 8:45 A.M. and Thursday, February 26, 1981, at 6:00 P.M. and rang the doorbell but received no answer. The process server then made inquiry of a neighbor concerning defendant Martin Weiszman. However, the neighbor was unable to furnish the process server with any information as to the availability of said defendant. The affidavit goes on to assert that the process server nailed a copy of the summons and complaint on the door and mailed a copy to defendant Martin Weiszman.

In addition to objecting to the admission of the affidavit of substituted service, Martin Weiszman's attorney argued that the affidavit was patently defective because it failed to demonstrate that the process server had exercised due diligence in

attempting to serve said defendant personally before resorting to substituted service.

Defendant Martin Weiszman, on his part, testified that no summons was affixed to the door of his residence. He claimed to have found the summons in his hallway. There was a mail slot in the door through which the document could have been deposited in the hallway. After considerable questioning of said defendant, the court ruled that proper service had been made upon him. The court did not address his claim that due diligence had not been shown.

In *Anton v Amato* (101 AD2d 819, 820-821), this court wrote:

"Where a process server dies prior to such a [traverse] hearing, his affidavit of service, if not conclusory and devoid of sufficient detail, shall be received as prima facie evidence of service (*Smid v Lombard,* 83 AD2d 877). However, where the process server is living and available to testify, defendant's sworn denial of service renders the affidavit of service nonconclusive and shifts the burden of proof to plaintiff to substantiate the allegation of personal service therein (*De Zego v Donald F. Bruhn, P.C.,* 99 AD2d 823; *Old Colony Furniture Co. v Fiegoli,* 97 AD2d 790; *Empire Nat. Bank v Judal Constr.,* 61 AD2d 789). Under such circumstances, the affiant must be made available for cross-examination by the party denying receipt (*Empire Nat. Bank v Judal Constr., supra*).

"Because the process server was available to testify in this case, Special Term erred when it admitted the affidavit as prima facie evidence of service in the face of defendant's sworn denial of receipt. That denial shifted the burden of proof to plaintiff, who should then have been required to call the process server to testify. The failure to have done so deprived defendant of the opportunity to cross-examine the process server regarding the allegations contained in the affidavit of service. Therefore, a new traverse hearing must be conducted."

Here, appellant denied being served "in conformity with the rules and regulations of the CPLR". That being so, the affidavit of the process server was not admissible into evidence to prove that service had been made in conformity with the CPLR unless the affiant was made available for cross-examination or was dead or otherwise unavailable (*Anton v Amato, supra; De Zego v Donald F. Bruhn, P. C.,* 99 AD2d 823, *supra; Smid v Lombard,* 83 AD2d 877, *supra*). At bar, there being no allegation of the unavailability of the process server, his affidavit was erroneously admitted into evidence.

While generally a new hearing on the issue of jurisdiction would be warranted so that plaintiffs could be given an opportunity to produce the process server, here the affidavit of substituted service, on its face, demonstrates a lack of due diligence by the process server and oral evidence cannot alter that fact. "Nail and mail" service is not sustainable unless there is proof that the process server first attempted with "due diligence" to cause service to be made in accordance with the provisions of CPLR 308 (1), (2). Because there is a reduced likelihood that a defendant will actually receive the summons when it is served pursuant to CPLR 308 (4), the requirement of "due diligence" is to be stringently observed (McLaughlin, 1981 Supplementary Practice Commentaries, McKinney's Cons Laws of NY, Book 7B, 1984-1985 Pocket Part, CPLR C308:4, p 169; *PacAmOr Bearings v Foley,* 92 AD2d 959). In the case at bar the affidavit of service states that the server tried unsuccessfully to personally serve appellant by going to appellant's home on the following dates and times: February 18, 1981, at 3:20 P.M.; February 20, 1981, at 8:45 A.M. and February 26, 1981, at 6:00 P.M. These three dates fell on weekdays and the three attempts were made during normal working hours or at times when it should reasonably have been concluded that appellant was in transit to or from his place of employment. Hence, the affidavit of substituted service itself shows a lack of due diligence on the part of the process server (*see, Barnes v City of New York,* 70 AD2d 580, *affd* 51 NY2d 906; *Reed v Domenech,* 90 AD2d 844; *Carfora v Pesiri,* 89 AD2d 237). That Martin Weiszman may actually have received a copy of the summons and complaint is irrelevant. Actual notice does not cure a defect in service or confer personal jurisdiction on the court. Process must be served and received by a means authorized by the CPLR. Absent strict compliance with the prerequisites of "nail and mail" service provided for in CPLR 308 (4), the trial court did not acquire valid in personam jurisdiction over Martin Weiszman, and the judgment must be reversed insofar as appealed from and the complaint dismissed on that ground.

If we were not reversing the judgment insofar as appealed from and dismissing the complaint as to the appellant for lack of personal jurisdiction we would nevertheless reverse the judgment insofar as appealed from and dismiss the complaint as to the appellant because the plaintiffs failed to establish that the appellant created the allegedly defective condition in the sidewalk or that the manner in which a portion of the sidewalk was used for appellant's own special purpose produced the defective condition.

It is well settled that "[i]n order to establish a basis for liability on the part of the abutting landowner, it must appear that the defective condition in the sidewalk was created by the owner, or was caused to exist because of the owner's use of the sidewalk, or a portion thereof, in a special manner (*Mullins* v. *Siegel-Cooper Co.,* 183 N. Y. 129; *Nickelsburg* v. *City of New York,* 263 App. Div. 625; *Weinberg* v. *Wing,* 16 A D 2d 900)" (*Friedman v Gearrity,* 33 AD2d 1044).

Faced, as we are, with a jury verdict in favor of the plaintiffs, we are compelled to view the evidence in the light most favorable to them (*Matter of Kornblum Metals Co. v Intsel Corp.,* 38 NY2d 376, 379). Even so viewing the evidence and affording the plaintiffs every favorable inference, we conclude, as a matter of law, that the evidence adduced was insufficient to sustain the jury's finding of liability against the appellant. Recognizing that the question of whether or not a sidewalk is defective is ordinarily one of fact for the jury (*see, Smith v City of New York,* 38 AD2d 965), the above-stated rules mandate that we assume the sidewalk at bar was in a defective condition at the time of plaintiff Zelma Kaszovitz' accident. However that may be, the uncontradicted evidence in the record reveals that when the sidewalk in question was constructed some 18 years before her fall, its slabs were even, that is, there was no more than a one-quarter inch height difference between the slabs. In addition, the appellant never worked on the slab in question. Clearly then, plaintiffs did not show that the appellant created the defect in the sidewalk.

Likewise, plaintiffs failed to show that the defect arose because of appellant's special use of the sidewalk.

Plaintiff Zelma Kaszovitz' testimony as well as the photographs of the accident scene introduced by her prove conclusively that her fall occurred outside of the driveway area of the appellant's premises. Nevertheless, it is argued that because a portion of the allegedly defective slab was a part of the appellant's driveway, the jury could reasonably have inferred that the defect came about as a result of appellant's special use of the public way. However, the record contains no proof whatsoever to support that claim. To the contrary, appellant's unrebutted testimony was that he never used the driveway or parked his car in the garage prior to 1980 because his automobile did not fit in the garage. Appellant testified further that no one else used the driveway for motor vehicles prior to 1980, that the garage was used for storage purposes during that time, and that it was only in 1980, after he had bought a small car, that he began to use the

driveway and the garage. In sum, there is nothing in the record before us to show that it was the appellant's activities rather than the normal elements and the passage of time which caused the defective condition of the sidewalk (*see, e.g., Shatzman v City of New York,* 38 AD2d 581, *affd* 31 NY2d 690; *Davenport v Apostol,* 26 AD2d 874, *affd* 22 NY2d 943).

Inasmuch as the plaintiffs did not show that the appellant created the defect or that the defect arose because of appellant's special use of the sidewalk, there was insufficient evidence adduced to warrant a judgment for the plaintiffs and the complaint should have been dismissed as to appellant.

THOMPSON, J. P., BROWN, NIEHOFF and LAWRENCE, JJ., concur.

Judgment of the Supreme Court, Kings County, entered April 2, 1984, reversed insofar as appealed from, with costs, and action as against appellant dismissed.