■ A-1 GENERAL CONTRACTING, INC., et al., Respondents, v RIVER MARKET COMMODITIES, INC., Appellant. (And Another Related Action.) [622 NYS2d 378] —Casey, J. Appeal from a judgment of the Supreme Court (Lomanto, J.), entered November 22, 1993 in Fulton County, upon a decision of the court in favor of plaintiffs.

The parties entered into an agreement whereby plaintiff A-1 General Contracting, Inc. (hereinafter plaintiff) was to demolish a former meat packing plant in the City of Utica, Oneida County, which consisted of an abandoned structure and a large smokestack. The demolition was to include the removal of all debris, and necessary backfilling and grading. Defendant agreed to pay $90,000 for the demolition work. The parties contemplated periodic partial payments or advances during the course of the work. After plaintiff began the demolition work, including the implosion of the chimney, a dispute arose as to whether plaintiff was entitled to a partial payment. Defendant refused to pay until plaintiff did more work; plaintiff refused to do more work until defendant made a partial payment. The parties' intransigence inevitably led to the courtroom where, in separate actions, each party claimed that the other breached the contract. After a nonjury trial, Supreme Court concluded that defendant not only breached the contract, but also acted willfully and maliciously, which had the intended effect of making plaintiff's performance of its contractual obligations impossible. Plaintiff's damages were assessed at $80,000, which represented the full amount of the contract price less the one $10,000 partial payment made by defendant. Defendant appeals from the judgment entered on Supreme Court's decision.

Based upon our review of the record, we agree with Supreme Court that defendant breached the contract, but we find no evidence in the record to support the court's finding on the issue of impossibility. In the exercise of our factfinding authority in this nonjury case (see, e.g., Kandrach v State of New York, 188 AD2d 910, 912-913), we conclude that the judgment should be modified to reduce the amount of damages to $45,500 for the reasons set forth below.

In response to defendant's request for bids on the demolition project, plaintiff submitted a proposal to perform the demoli-

tion for $90,000, which defendant accepted. The proposal contained no detail regarding plaintiff's obligations or how payment was to be made by defendant. The parties subsequently executed a contract which details the work to be performed by plaintiff. Regarding payment, the contract contains a provision which recognized plaintiff's need for funds during the course of the demolition work, and as a result defendant agreed "to advance to [plaintiff], upon request, on account of the monies to become due upon completion of this contract such reasonable sums as in the judgment of [defendant] may balance the work performed by [plaintiff] to the date of such request, allowing the retention, at all times, of sufficient funds to cover the unfinished work remaining to fulfill the terms of this agreement".

Prior to the execution of the contract, plaintiff Kenneth F. Roser (plaintiff's president) and defendant's attorney apparently discussed a specific payment schedule. In the belief that an agreement had been achieved during the discussions, Roser drafted a letter setting forth a payment schedule which required six $10,000 payments upon completion of specified stages of the demolition work and a final $30,000 payment upon completion of all work. Upon receipt of the typewritten letter, defendant's attorney added to five of the $10,000 payments handwritten notations which required removal of debris in addition to the demolition work specified in the letter. Supreme Court concluded that the letter could be used to clarify or define the ambiguous payment provision in the contract, and agreed with plaintiff that the handwritten notations should be ignored. We disagree. We find that the letter establishes the lack of an agreement regarding a specific payment schedule. As evidenced by the typewritten portion of the letter, plaintiff sought a payment schedule with specific terms. As evidenced by the handwritten notations added by defendant's attorney, defendant sought a payment schedule with different terms. There clearly was no meeting of the minds regarding the terms of a specific payment schedule, a conclusion buttressed by the parties' subsequent execution of the contract which contained the vague provision regarding payment and did not refer to the earlier letter. We conclude, therefore, that the letter is irrelevant for the purpose of determining which party breached the contract.

Plaintiff contends that defendant breached the contract by refusing plaintiff's request for an additional advance of the money due under the contract. Defendant contends that no additional advance was required until further work was per-

formed and, therefore, plaintiff breached the contract by refusing to perform. Resolution of the competing claims depends upon the interpretation and application of the contractual payment provision set forth above. The provision cannot be construed as giving defendant the unfettered right to decide if, when and how much money should be advanced to plaintiff, for a contract should not be interpreted in such a way as would leave one of its provisions substantially without force or effect (see, Tantleff v Truscelli, 110 AD2d 240, 245-246, affd 69 NY2d 769). We construe the provision as requiring that defendant act reasonably in exercising its judgment when an advance is requested, taking into account the amount of the work performed in relation to the total work contemplated. The issue, therefore, distills to whether there was a reasonable basis for defendant's refusal to make the payment requested by plaintiff.

The testimony of Roser and a subcontractor who worked on the project, together with the photographic evidence, clearly establishes that plaintiff made substantial progress on the project. After moving equipment onto the site in November 1986, plaintiff made several written and numerous oral requests for an advance as the work progressed. Roser testified that defendant's attorney agreed to deliver a $20,000 payment to the work site the day the smokestack was brought down with dynamite. The attorney was present at the sight and watched the blasting, which occurred at the end of February 1987, but he left without delivering the payment. Plaintiff thereafter received a $10,000 check in the mail and continued to work into July 1987 despite defendant's failure to comply with plaintiff's repeated requests for more money. Defendant suggested at trial that plaintiff breached the contract by using subcontractors and by failing to have adequate insurance, but during the relevant time period defendant never directed plaintiff to cease work. Instead, defendant's attorney repeatedly urged plaintiff to continue the work and assured plaintiff that additional payments would be made when the work progressed. There is also evidence in the record to support Supreme Court's finding of adequate insurance. Having received no payment other than $10,000, plaintiff stopped work in July 1987. According to Roser and the subcontractor, the project was 80% complete at that time.

We find that the evidence clearly establishes that defendant did not act reasonably in refusing to advance any more than approximately 11% of the contract price despite the substantial progress made by plaintiff. Defendant claims that its

refusal was justified by the presence of a large amount of debris on the property. According to Roser and the subcontractor, some debris was removed as the demolition progressed but most of it was left for removal after the actual demolition was completed. The contract requires the removal of all debris, but it does not require removal prior to completion of the project. Nor does the contract condition partial payment on removal of debris. As previously noted, the notations added by defendant's attorney to the payment schedule proposed by plaintiff do not reflect the parties' agreement. Based upon defendant's unreasonable refusal to advance moneys upon plaintiff's request, we conclude that defendant breached the payment provision of the parties' contract.

Defendant contends that plaintiff is not entitled to recover any damages because plaintiff breached the contract by failing to complete the demolition and clean-up required by the contract. A contractor can recover on the theory of substantial performance only where the failure of performance is relatively slight (*Callanan Indus. v Smiroldo,* 100 AD2d 717, 718), and we agree with defendant that plaintiff's performance did not satisfy the requirement (*see, Carefree Bldg. Prods. v Belina,* 169 AD2d 956, 957). It is the general rule, however, that a party to a contract cannot rely on the failure of another to perform when he has frustrated or prevented the performance (*see, Kooleraire Serv. & Installation Corp. v Board of Educ.,* 28 NY2d 101, 106), and we agree with Supreme Court's finding that in the circumstances of this case defendant's failure to pay for the work performed by plaintiff justified plaintiff's refusal to complete the project (*see, Picciano & Son v Olympic Constr. Co.,* 112 AD2d 604, 607, *appeal dismissed* 66 NY2d 854).

We disagree, however, with Supreme Court's finding that defendant's conduct effectively rendered plaintiff's performance impossible, which is different than the disruption and frustration necessary to excuse nonperformance (*see, Young v Whitney,* 111 AD2d 1013, 1014). The evidence in the record establishes that defendant's failure to pay caused plaintiff some financial hardship, but plaintiff's decision to discontinue work was a voluntary one based largely upon advice of counsel. According to Roser, the work could have been completed for $18,000 and there is nothing in the record to establish that plaintiff's financial condition rendered further performance impossible. Accordingly, we need not reach the legal issue of whether plaintiff would be entitled to the full contract price if

defendant's conduct rendered it impossible for plaintiff to complete the work required by the contract.

Turning to the issue of damages, Roser and a subcontractor testified that the project was 80% complete which, when applied to the $90,000, would entitle plaintiff to $72,000, a figure which is consistent with the testimony of Roser that the work could be completed for $18,000. Nevertheless, we find that plaintiff is entitled to less than $72,000. On the issue of damages, we find the payment schedule proposed by Roser to be relevant for the purpose of establishing plaintiff's valuation of its services. Plaintiff's subcontractor testified that the actual demolition and the clean-up were two separate aspects of the project, and the proposed payment schedule confirms that plaintiff was of the same view, for it apportioned $60,000 of the contract price to actual demolition and $30,000 to the work remaining after the demolition was completed. There is evidence in the record that the actual demolition was approximately 85% complete, which yields $51,000 for the demolition work done by plaintiff (85% of $60,000). As to the clean-up work, there is evidence that only 15% of the project had been both demolished and cleaned up, so that plaintiff is entitled to $4,500 for the clean-up work it had completed (15% of $30,000). The total amount for demolition and clean-up performed by plaintiff is $55,500 which, when reduced by the $10,000 paid by defendant, yields damages of $45,500, instead of the $80,000 awarded by Supreme Court. We have considered defendant's other arguments and find them irrelevant, meritless or academic in light of the new factual findings.

Cardona, P. J., Mercure and Peters, JJ., concur. Ordered that the judgment is modified, on the law and the facts, without costs, by reducing the award of money damages from $80,000 to $45,500, and, as so modified, affirmed.