OPINION OF THE COURT
Kaye, J.
In this action for slander, we consider whether the plaintiff has stated a viable claim without any showing of special damages, whether the alleged slander is protected by qualified privilege, and whether there is a triable issue of fact as to malice. We conclude that plaintiffs claims were correctly dismissed on summary judgment.
I.
Before us is one of eight actions, consolidated for disposition by the .motion court, centering on a luxury apartment building in Manhattan. Plaintiff, Barnet L. Liberman, is the building’s landlord. Defendant, Leonard Gelstein (a tenant), is on the board of governors of the tenants’ association. Disputes between the landlord and tenants of the building erupted nearly a decade ago, when the tenants organized opposition to the landlord’s application for a rent increase, and they have continued and proliferated through the conversion of the building to cooperative ownership (see, e.g., Matter of 421 Hudson St. Tenants Assn, v Abrams, 140 Misc 2d 166).
This defamation action against Gelstein is one of three suits brought by Liberman against individual members of the tenant association’s board of governors. Gelstein has countersued Liberman and his wife for misconduct arising from a criminal *433 complaint filed by Mrs. Liberman, which apparently resulted in Gelstein’s overnight incarceration.
The present complaint alleged five causes of action sounding in slander. Only two — the second and fifth — are pressed by plaintiff on this appeal. The other causes of action involving, for example, accusations by Gelstein that Liberman charged an illegal $10 monthly dog rent and stole electricity from the building, have over the years been dropped.
In his second cause of action, plaintiff alleged that in July 1986, the following conversation took place between defendant and another tenant of the building, Robert Kohler.
"Gelstein: Can you find out from your friend at the precinct which cop is on the take from Liberman?
"Kohler: What are you talking about?
"Gelstein: There is a cop on the take from Liberman. That’s why none of the building’s cars ever get tickets — they can park anywhere because Liberman’s paid them off.
He gives them a hundred or two hundred a week.”
The fifth cause of action alleged that in May 1986 defendant made the following statement in the presence of employees of the building:
"Liberman threw a punch at me. He screamed at my wife and daughter. He called my daughter a slut and threatened to kill me and my family.”
Plaintiff claimed $5 million damages on each cause of action for injury to his reputation and emotional distress. After discovery, defendant sought summary judgment dismissing the complaint. On the second cause of action, defendant invoked the "common interest” qualified privilege, characterizing his conversation with Kohler, a colleague on the board of governors, as an inquiry designed to uncover wrongdoing by the landlord affecting tenants. At his deposition, defendant testified that several vehicles operated by the building’s management regularly parked in front of the building beyond the legal limit but never received parking summonses. He further testified that he was told by two building employees, whom he identified, that Liberman was bribing the police to avoid parking tickets. Defendant admitted that he did not know whether the allegations were true, but testified that they *434 "sounded truthful” to him. Accordingly, defendant testified that he approached Kohler — whose friend was captain of the local police precinct — in an effort to discover whether the allegations were true.
Plaintiff responded that there was an issue of fact on malice, which if proved at trial, would defeat the qualified privilege. Plaintiff argued that malice of the common-law variety (spite or ill will) could be inferred from defendant’s over-all conduct toward plaintiff, including one occasion in July 1987 when defendant threw a lit firecracker into his car and another in May 1986 when he pounded on the car’s windows and attempted to rip out the windshield wiper. Moreover, plaintiff argued, malice of the constitutional variety (knowledge of falsity or reckless disregard for truth or falsity) could be found in defendant’s concession that he had no actual knowledge of bribery and the lack of trustworthiness of his sources, "disgruntled” building employees.
On the fifth cause of action, defendant argued that the statements were either true, not defamatory or never made.
In dismissing the second cause of action, Supreme Court agreed with defendant that the statements were qualifiedly privileged and plaintiff failed to sustain his burden of raising a triable issue on malice. The court also held that the statements comprising the fifth cause of action could only have been understood by the recipients, who were familiar with the parties’ history of disagreements, as rhetorical hyperbole.
The Appellate Division affirmed, agreeing with Supreme Court’s reasoning. One Justice, who would have reinstated the second cause of action, dissented in part. He was not "entirely persuaded” that the statements were qualifiedly privileged, and thought that in any event defendant’s deposition testimony that he did not know whether the bribery charge was true was itself sufficient to raise a triable issue whether the statements were made with reckless disregard as to their truth or falsity.
The Appellate Division granted leave, and we affirm.
II.
Slander as a rule is not actionable unless the plaintiff suffers special damage (see, Aronson v Wiersma, 65 NY2d 592, 594; Matherson v Marchello, 100 AD2d 233, 236 [Titone, J. P.]; Restatement [Second] of Torts [Restatement] § 575). Special damages contemplate "the loss of something having economic *435 or pecuniary value” (Restatement § 575, comment b; see, Prosser and Keeton, Torts [Prosser] § 112, at 794 [5th ed]). Plaintiff has not alleged special damages, and thus his slander claims are not sustainable unless they fall within one of the exceptions to the rule.
The four established exceptions (collectively “slander per se”) consist of statements (i) charging plaintiff with a serious crime; (ii) that tend to injure another in his or her trade, business or profession; (iii) that plaintiff has a loathsome disease; or (iv) imputing unchastity to a woman (see, Moore v Francis, 121 NY 199, 203; Privitera v Town of Phelps, 79 AD2d 1, 3 [Simons, J.]; Civil Rights Law § 77; 2 Seelman, Libel and Slander in the State of New York, at 869-907 [1964]; Restatement §§ 570-573; Smolla, Defamation § 7.05). When statements fall within one of these categories, the law presumes that damages will result, and they need not be alleged or proven.[1]
Plaintiff claims that both sets of statements were slanderous per se inasmuch as they charged him with criminal conduct. Not every imputation of unlawful behavior, however, is slanderous per se. “With the extension of criminal punishment to many minor offenses, it was obviously necessary to make some distinction as to the character of the crime, since a charge of a traffic violation, for example, would not exclude a person from society, and today would do little, if any, harm to his [or her] reputation at all” (Prosser § 112, at 789). Thus, the law distinguishes between serious and relatively minor offenses, and only statements regarding the former are actionable without proof of damage (see, Restatement § 571, comment g [list of crimes actionable as per se slander includes murder, burglary, larceny, arson, rape, kidnapping]).
We agree with plaintiff that defendant’s alleged statement that ”[t]here is a cop on the take from Liberman” charges a serious crime — bribery (see, Penal Law § 200.00; People v Tran, 80 NY2d 170). Accordingly, the statements constituting the second cause of action are actionable without the need to establish special harm, and absent any privilege would be sufficient to go to a jury.
*436 We disagree, however, with plaintiff’s contention that the statement "Liberman * * * threatened to kill me and my family” was slanderous per se.[2] Plaintiff claims these words falsely attributed to him the commission of the crime of harassment (see, Penal Law § 240.25; People v Dorns, 88 Mise 2d 1064 [threats to kill]). Harassment is a relatively minor offense in the New York Penal Law — not even a misdemeanor —and thus the harm to the reputation of a person falsely accused of committing harassment would be correspondingly insubstantial. Hence, even if we agreed with plaintiff that the statement would not have been construed by the listeners as rhetorical hyperbole, the cause of action must nevertheless be dismissed because it is not slanderous per se to claim that someone committed harassment.
Plaintiff alternatively argues that the statements in the fifth cause of action tended to harm him in his business as a property owner, and thus are actionable under the "trade, business or profession” exception. That exception, however, is "limited to defamation of a kind incompatible with the proper conduct of the business, trade, profession or office itself. The statement must be made with reference to a matter of significance and importance for that purpose, rather than a more general reflection upon the plaintiff’s character or qualities” (Prosser § 112, at 791). Thus, "charges against a clergyman of drunkenness and other moral misconduct affect his fitness for the performance of the duties of his profession, although the same charges against a business man or tradesman do not so affect him” (Restatement § 573, comment c). The statements at issue are unrelated to plaintiff’s status as a landlord, and therefore do not fall into the "trade, business or profession” exception (see, Aronson v Wiersma, 65 NY2d, at 594, supra).
In sum, the second cause of action is on its face sustainable without special damages because it involves charges of serious crime, and the fifth cause of action was correctly dismissed.
III.
We next consider whether the courts below properly concluded that defendant’s conversation with Kohler was conditionally privileged and that plaintiff failed to raise an issue of fact on malice.
*437 Courts have long recognized that the public interest is served by shielding certain communications, though possibly defamatory, from litigation, rather than risk stifling them altogether (see, Bingham v Gaynor, 203 NY 27, 31). When compelling public policy requires that the speaker be immune from suit, the law affords an absolute privilege, while statements fostering a lesser public interest are only conditionally privileged (see, 600 W. 115th St. Corp. v Von Gutfeld, 80 NY2d 130, 135-136; Park Knoll Assocs. v Schmidt, 59 NY2d 205, 208-209; Toker v Pollak, 44 NY2d 211, 218-220).
One such conditional, or qualified, privilege extends to a "communication made by one person to another upon a subject in which both have an interest” (Stillman v Ford, 22 NY2d 48, 53). This "common interest” privilege (see, Restatement § 596) has been applied, for example, to employees of an organization (see, Loughry v Lincoln First Bank, 67 NY2d 369, 376), members of a faculty tenure committee (Stukuls v State of New York, 42 NY2d 272) and constituent physicians of a health insurance plan (Shapiro v Health Ins. Plan, 7 NY2d 56, 60-61). The rationale for applying the privilege in these circumstances is that so long as the privilege is not abused, the flow of information between persons sharing a common interest should not be impeded.
We thus agree with the motion court and Appellate Division that defendant’s conversation with Kohler was conditionally privileged (see, Restatement § 596, comment d ["Tenants in common * * * are included within the rule stated in this Section as being conditionally privileged to communicate among themselves matter defamatory of others which concerns their common interests”]). Gelstein and Kohler were members of the governing body of an association formed to protect the tenants’ interests. If Liberman was in fact bribing the police so that his cars could occupy spaces in front of the building, that would be inimical to those interests. Thus, Gelstein had a qualified right to communicate his suspicions— though defamatory of Liberman — to Kohler.
The shield provided by a qualified privilege may be dissolved if plaintiff can demonstrate that defendant spoke with "malice” (see, Park Knoll Assocs. v Schmidt, 59 NY2d, at 211, supra). Under common law, malice meant spite or ill will (see, Stillman v Ford, 22 NY2d, at 53, supra; Shapiro v Health Ins. Plan, 7 NY2d, at 61, supra). In New York Times Co. v Sullivan (376 US 254), however, the Supreme Court established an *438 "actual malice” standard for certain cases governed by the First Amendment: "knowledge that [the statement] was false or * * * reckless disregard of whether it was false or not” (376 US, at 279-280). Consequently, the term "malice” has become somewhat confused (see, Mahoney v Adirondack Publ. Co., 71 NY2d 31, 36, n 1; see also, Greenbelt Publ. Assn, v Bresler, 398 US 6, 10 [trial court erred in First Amendment case by charging jury under common-law malice standard]). Indeed, as the Supreme Court itself recently acknowledged (Masson v New Yorker Mag., 501 US —, —, 111 S Ct 2419, 2429-2430):
"Actual malice under the New York Times standard should not be confused with the concept of malice as an evil intent or a motive arising from spite or ill will * * * We have used the term actual malice as a shorthand to describe the First Amendment protections for speech injurious to reputation and we continue to do so here. But the term can confuse as well as enlighten. In this respect, the phrase may be an unfortunate one.”
Nevertheless, malice has now assumed a dual meaning, and we have recognized that the constitutional as well as the common-law standard will suffice to defeat a conditional privilege (see, Loughry v Lincoln First Bank, 67 NY2d, at 376, supra; O’Rorke v Carpenter, 55 NY2d 798, 799; Stillman v Ford, 22 NY2d, at 53, supra; see also, Restatement §§ 600, 603, comment a).
Under the Times malice standard, the plaintiff must demonstrate that the "statements [were] made with [a] high degree of awareness of their probable falsity” (Garrison v Louisiana, 379 US 64, 74). In other words, there "must be sufficient evidence to permit the conclusion that the defendant in fact entertained serious doubts as to the truth of [the] publication” (St. Amant v Thompson, 390 US 727, 731; see also, Restatement § 600, comment b).
Applying these principles, we conclude that there is no triable malice issue under the Times standard. Although the dissenter below suggested that Gelstein’s admission that he did not know whether the bribery charge was true raised a triable issue on malice, there is a critical difference between not knowing whether something is true and being highly aware that it is probably false. Only the latter establishes reckless disregard in a defamation action. Moreover, as the motion court correctly observed, plaintiff’s mere characteriza *439 tian of Gelstein’s informants as "disgruntled” is insufficient to raise a triable issue. Although plaintiff criticizes defendant for not producing affidavits from the informants — arguing that "it has never been factually established that Gelstein had any source” — it was plaintiff’s burden to raise a factual issue on malice, and he did not seek to depose the employees either.[3] In sum, this record is insufficient to raise a triable issue of fact under the Times standard of malice.
Similarly, there is insufficient evidence of malice under the common-law definition. A jury could undoubtedly find that, at the time Gelstein discussed his bribery suspicions with Kohler, Gelstein harbored ill will toward Liberman. In this context, however, spite or ill will refers not to defendant’s general feelings about plaintiff, but to the speaker’s motivation for making the defamatory statements (see, Restatement § 603, and comment a; Stukuls v State of New York, 42 NY2d, at 281-282, supra; Stillman v Ford, 22 NY2d, at 53, supra). If the defendant’s statements were made to further the interest protected by the privilege, it matters not that defendant also despised plaintiff. Thus, a triable issue is raised only if a jury could reasonably conclude that "malice was the one and only cause for the publication” (Stukuls v State of New York, 42 NY2d, at 282, supra).
Plaintiff has not sustained that burden. Significantly, Gel-stein did not make a public announcement of his suspicions— from which an inference could be drawn that his motive was to defame Liberman — but relayed them to a colleague who was in a position to investigate. As noted, the conversation was within the common interest of Gelstein and Kohler, and there is nothing in this record from which a reasonable jury could find that Gelstein was not seeking to advance that common interest.
Thus, the courts below properly concluded that defendant’s conversation with Kohler was qualifiedly privileged, and plaintiff failed to raise a fact issue on malice.[4]
*440 Accordingly, the order of the Appellate Division should be affirmed, with costs.

. The presumed-damages rule has been found unconstitutional in certain First Amendment cases (Gertz v Robert Welch, Inc., 418 US 323, 349) and criticized for use in defamation cases generally (see, e.g., Anderson, Reputation, Compensation, and Proof, 25 Wm & Mary L Rev 747 [1984]; Uniform Defamation Act [Feb. 6,1992 draft] § 9, and comment thereto). Our disposition makes it unnecessary to consider the issue here.

. On this appeal, this is the only portion of the fifth cause of action raised by plaintiff.

. Plaintiffs appellate argument that he needs further discovery (see, dissenting opn, at 442) is unavailing. Almost three years elapsed between defendant’s assertion of the common-interest privilege in his verified answer and the motion for summary judgment. Indeed, plaintiff never claimed a need for discovery in opposition to the motion (see, CPLR 3212 [f]).

. The dissent’s contrary conclusion is puzzling in light of its acknowledgment that the "record is presently lacking any evidence to support the conclusion that defendant knew that the [bribery] accusation was false, that there was a high degree of probable falsity, or that he entertained serious *440 doubts as to its truthfulness.” (Dissenting opn, at 442.) Moreover, the purported factual issue whether the bribery "accusation was stated as a matter of fact or as part of an inquiry” (dissenting opn, at 442) goes not to malice, but to whether there is an actionable statement in the first instance. Insofar as the dissent concludes that the parties’ "acrimonious relationship” is sufficient to raise a triable issue under the common-law standard (dissenting opn, at 442), we have observed that the "existence of earlier disputes between the parties is not evidence of malice” (Shapiro v Health Ins. Plan, 7 NY2d, at 64, supra).