OPINION OF THE COURT
Jack J. Cannavo, J.
This motion by the defendant for summary judgment dismissing the action is granted.
On July 31, 1993, William Doyle, who was 81 years of age, a diabetic and an amputee, was admitted to Mather Memorial Hospital by his personal physician, Dr. Mendleson, for testing. Dr. Mendleson arranged to have the plaintiff, Dr. Halegoua, cover for him over the weekend while William Doyle remained a patient in the hospital.
The defendant, Vincent Doyle, who is William Doyle’s son, left his father at approximately 4:00 p.m. At approximately 5:00 p.m. or 5:30 p.m., Vincent Doyle received a phone call to return to the hospital because it appeared that his father, William Doyle, had suffered a stroke. Vincent Doyle and his wife went to the hospital immediately, and they remained with William Doyle in his hospital room. William Doyle was incoherent. Although Dr. Halegoua made telephone calls to the hospital floor where his patient was located, he never physically appeared to talk to the defendant in this action, Vincent Doyle. According to Vincent Doyle, and uncontradicted by the record before the court, the plaintiff, Dr. Halegoua, did not immediately order a glucose test on William Doyle. In fact, only a CAT scan and neurological examinations were initially ordered at around 7:00 p.m., but a simple, quick test with a glucometer was not ordered or done at that time.
There is a dispute as to who actually ordered the glucose test to obtain the blood sugar level of William Doyle since the defendant alleges that Dr. Halegoua was discharged by the family, and the "house” physician assumed responsibility for the care of the patient and ordered the test. In any event, when *988 the blood sugar level test was finally administered approximately four hours after William Doyle became incoherent, the glucometer registered at 35. When it was redone 10 minutes later at 9:40 p.m., it registered at 33. Blood was also drawn for laboratory tests at that time. Emergency treatment was given to raise the blood sugar level of the patient, and the patient immediately became alert. At 10:25 p.m,, the laboratory results from the blood test were entered into the hospital record. The laboratory tests indicated the patient had a glucose level of 28 at 9:45 p.m. It is undisputed by the plaintiff that this low blood sugar level is consistent with diabetic shock or medical crisis caused by a low blood sugar level.
On August 1, 1995, Vincent Doyle wrote a letter to the Office of Professional Medical Conduct, New York State Department of Health with copies to Dr. Halegoua, the president of Mather Memorial Hospital, the chairman of Mather Memorial Hospital, Dr. Mendleson and Conrad Rybicki, Esq., reporting the incident detailed above.
It is unclear whether an investigation of this incident has been concluded at this time. However, Dr. Halegoua has commenced this libel action against Vincent Doyle alleging that the letter sent was defamatory.
Statements made for the purpose of medical and hospital peer review have both statutory and common-law immunities from defamation (Education Law § 6527 [5]; Public Health Law § 2805-m [3]; Buckley v Litman, 57 NY2d 516).
The letter itself was addressed to the New. York State Department of Health, Office of Professional Medical Conduct. The New York State Department of Health performs a quasi-judicial function under Public Health Law § 230, and this is the very agency that polices the medical profession. If the defendant believed that his father did not receive adequate medical treatment from a physician, this is clearly the proper agency to contact. The court notes that an absolute privilege has been found to include a letter to a bar association to consider grievances (Davis v Williams, 59 AD2d 660, ajfd 44 NY2d 882; Feinman v Hinchey, 71 AD2d 1012).
The court agrees that the statements contained in the plaintiff’s letter are not absolutely privileged because they were not only mailed to the New York State Department of Health but to other individuals as well. Absolute privilege attaches "for the publication of a fair and true report of any judicial proceeding, legislative proceeding or other official proceeding” (Civil Rights Law § 74). In addition to the absolute *989 privilege provided by the Civil Rights Law, there is an absolute common-law privilege for statements necessitated by the public interest and the personal position of the speaker and made as part of a speaker’s participation in the process of government (see, Holmes v City of New Rochelle, 190 AD2d 713). The court finds that the statements made in the letter are also not covered by any common-law absolute privilege because they were mailed to private individuals in addition to the governmental agency charged with supervising the medical profession (see, Park Knoll Assocs. v Schmidt, 59 NY2d 205).
However, the letters sent by the defendant to the New York State Department of Health, Dr. Halegoua, Mr. Roberts (the president of Mather Memorial Hospital), Mr. Vincent Bove (the chairman of Mather Memorial Hospital), Dr. Mendleson (William Doyle’s personal physician), and to Conrad Rybicki (defendant’s personal attorney) are covered by a qualified privilege.
The qualified privilege has been extended to cover physicians’ comments concerning the care rendered by other physicians (Hollander v Cayton, 145 AD2d 605); supervisors’ comments about nurses’ actions (Hyer v Southside Hosp., 227 AD2d 592); statements made at a peer review committee (Dos v St. John’s Episcopal Hosp., 199 AD2d 460, lv denied 83 NY2d 754); and doctors’ comments about a nurse made in a letter to various personnel of a hospital (Friedman v Ergin, 110 AD2d 620, affd 66 NY2d 645).
Communications are covered by a qualified privilege where they are made by a person with an interest in the subject and addressed to other persons with a corresponding interest (see, Foster v Churchill, 87 NY2d 744; Liberman v Gelstein, 80 NY2d 429; Mihlovan v Grozavu, 72 NY2d 506; Friedman v Ergin, 110 AD2d 620, affd 66 NY2d 645, supra; Farooq v Coffey, 206 AD2d 879; Norwood v City of New York, 203 AD2d 147; Breen v Leonard, 198 AD2d 392; Park v Lewis, 139 AD2d 961; Hollander v Cayton, 145 AD2d 605, supra). Where, as here, there is no dispute as to the main facts upon which the qualified privilege is based, it is proper for the court to determine if the subject matter and defendant’s interest are sufficient to establish a qualified privilege (Williams v Tritschler, 184 AD2d 690; Green v Kinsella, 36 AD2d 677).
The plaintiff does not allege that this was a matter in which the defendant lacked an interest. The record, in fact, shows that the defendant, the son of the patient, was the first person who responded to the hospital when William Doyle, defendant’s *990 father, went into distress, and, at that time, the defendant and his wife were making the medical decisions affecting William Doyle’s life after consultation with his treating physician. Clearly, if Vincent Doyle believed his father received improper treatment at the hospital, he was the person in the best position to raise this issue.
The court further finds that the privilege was not abused by the publishing of the letter to persons who did not have an interest. The recipients of the letter, with the exception of the defendant’s attorney, all had an interest in the medical care received by the defendant’s father at the hospital where the incident happened. Dr. Mendleson was William Doyle’s treating physician, and he made the decision to bring in Dr. Halegoua to cover for him over the weekend (see, Rios v Smithtown Gen. Hosp., 65 AD2d 808). This court holds that the communication to this treating physician does not result in the defendant losing the qualified privilege (see, Buckley v Litman, 57 NY2d 516, supra). The primary treating physician had a bona fide interest in the care received by his patient at the hospital.
The president and the chairman of Mather Memorial Hospital both have the professional, legal and moral obligation to ensure that patients are receiving adequate care and treatment at their institution. The letter was properly sent to them by the defendant.
The letter that was sent to Conrad Rybicki was mailed as a result of the attorney-client relationship that had arisen between the defendant and Mr. Rybicki before the letter was mailed to the parties. Vincent Doyle had sought legal advice from Mr. Rybicki because of the incident on July 31, 1993 and his father’s subsequent death from kidney failure in January of 1994.
As noted previously, the New York State Department of Health was clearly a proper party to which to send the letter (Public Health Law § 230).
A qualified privilege does not extend beyond the legal, moral or social duty to communicate on a matter in which the party has an interest (Shapiro v Health Ins. Plan, 7 NY2d 56). That privilege was not abused herein because the statements were made to persons or entities with a corresponding interest (Han v State of New York, 186 AD2d 536).
In order to defeat the qualified privilege, the plaintiff must raise a triable issue of fact as to the defendant’s malice in writing the letter under either the common-law or the constitu *991 tional standard (Liberman v Gelstein, 80 NY2d 429, supra). A qualified privilege merely negates the presumption of malice, and the plaintiff then has the burden on this issue (Toker v Poliak, 44 NY2d 211).
Common-law malice does not refer to the defendant’s general feelings about the plaintiff. It refers to the defendant’s motivation in making the statements (Stukuls v State of New York, 42 NY2d 272). If the statements in the letter were made to further the interest protected by the privilege, it does not matter that the defendant despised the plaintiff personally and professionally (Liberman v Gelstein, 80 NY2d 429, supra; see generally, Friedman v Ergin, 110 AD2d 620, affd 66 NY2d 645, supra).
The statements herein were communicated to a very limited number of people and an official State agency and all of them had a direct interest in investigating the event. In addition, the letter did not hurl personal attacks at the plaintiff, and it instead presents a narrative of the defendant’s view of the events. Although in one paragraph the defendant said Dr. Halegoua was negligent and unprofessional, these opinions are insufficient to support the plaintiff’s claim (Parks v Steinbrenner, 131 AD2d 60; see, Hyer v Southside Hosp., 227 AD2d 592, supra; Dos v St. John’s Episcopal Hosp., 199 AD2d 460, lv denied 83 NY2d 754, supra).
Under the constitutional standard for malice, the plaintiff must demonstrate that "the defendant in fact entertained serious doubts as to the truth” of the statements in the letter (St. Amant v Thompson, 390 US 727, 731). In other words, in order for the statements of the defendant to be made with malice under the constitutional standard, they must have been published with a "high degree of awareness of their probable falsity” (Garrison v Louisiana, 379 US 64, 74).
The plaintiff has attempted to demonstrate malice by asserting that the hospital records prove that the statements made in the letter were false. However, the records instead confirm that Dr. Halegoua was the treating physician who communicated often by telephone, that William Doyle’s glucose blood level was not checked for over three hours during which time he was incoherent, that the patient’s blood sugar level was dangerously low when it was finally checked, and that the patient almost immediately stabilized when his glucose deficiency was treated. There is no indication in the records that Dr. Halegoua physically examined the patient on the day of the incident.
*992 Therefore, there is no showing that the defendant acted ■ with "malice” as that term is defined legally when the letter was written (see, Murphy v Herfort, 140 AD2d 415, lv denied 73 NY2d 701). Summary judgment is appropriate under these facts (Schwartz v Society of N. Y. Hosp., 232 AD2d 212; Haywood v University of Rochester, 209 AD2d 1021, rearg denied 1995 WL 42463 [4th Dept. Feb. 3, 1995]). The defendant’s motion must be granted (Buckley v O’Keefe, 210 AD2d 195; see, Davis v Independent Transporters of Handicapped, 226 AD2d 496).