20-642
*Oakley v. Dolan et al.*

**UNITED STATES COURT OF APPEALS**
**FOR THE SECOND CIRCUIT**

**SUMMARY ORDER**

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007 IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 16th day of November, two thousand twenty.

PRESENT:
        JON O. NEWMAN,
        GUIDO CALABRESI,
        SUSAN L. CARNEY,
                *Circuit Judges.*

_____

CHARLES OAKLEY,

        *Plaintiff-Appellant*,

        v.                            No. 20-642

JAMES DOLAN, IN HIS INDIVIDUAL CAPACITY, IN HIS PROFESSIONAL CAPACITY, MSG NETWORKS, INC., MADISON SQUARE GARDEN COMPANY, AND MSG SPORTS & ENTERTAINMENT, LLC,

        *Defendants-Appellees.*

_____

FOR APPELLANT:                DOUGLAS H. WIGDOR, Wigdor Law (Renan F. Varghese, *on the brief*), New York, NY.

                                 NELSON A. BOXER, Petrillo Klein & Boxer LLP, New York, NY.

FOR APPELLEE:                                    RANDY M. MASTRO (Akiva Shapiro, Declan T. Conroy, Grace E. Hart, *on the brief*), Gibson, Dunn & Crutcher LLP, New York, NY.

Appeal from a judgment of the United States District Court for the Southern District of New York (Sullivan, *J.*).[1]

**UPON DUE CONSIDERATION WHEREOF, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment entered on February 20, 2020, is **AFFIRMED** in part, **REVERSED** in part, and the case **REMANDED**, consistent with this Order and an accompanying Opinion filed on the same date. This Order addresses only that portion of the judgment that the panel affirms.

Charles Oakley appeals from the District Court's dismissal of his claims arising from his ejection from Madison Square Garden (the "Garden" or "MSG") on February 8, 2017, shortly after he arrived to attend a New York Knicks basketball game as an audience member. Oakley brings New York law claims of assault and battery, defamation, and false imprisonment, as well as a claim for unlawful denial of public accommodation under the Americans with Disabilities Act ("ADA") and New York State Human Rights Law ("NYSHRL").[2] We assume the parties' familiarity with the underlying allegations, procedural history, and arguments on appeal, to which we refer only as necessary to explain our decision to affirm the dismissal of all claims except those for assault and battery, which we address in the accompanying Opinion.[3]

We review *de novo* a district court's grant of a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). In doing so, we must assume the truth of all allegations and draw all reasonable

---

[1] Judge Richard J. Sullivan, United States Circuit Judge, sitting by designation. Judge Sullivan was a District Judge when Oakley's complaint was filed. Judge Sullivan retained the case when he became a Circuit Judge in October 2018. All references to the District Court in this Order are to Judge Sullivan's rulings filed in the District Court.

[2] Oakley also brought a New York law claim for abuse of process that was dismissed by the District Court. He does not challenge that dismissal on appeal.

[3] Oakley appeals the District Court's denial of leave to further amend his pleading under Federal Rule of Civil Procedure 15. Because we affirm the dismissal of most claims in this Order, and we hold that the assault and battery claims are adequate as pleaded, we affirm the denial of leave to amend.

inferences from those allegations in the plaintiff's favor. *See Biro v. Conde Nast*, 807 F.3d 541, 544 (2d Cir. 2015).[4]

The operative amended complaint alleges that, on February 8, 2017, Oakley, a former Knicks player, attended a Knicks game at the Garden. Oakley and Defendant James Dolan—the Executive Chairman of Defendants MSG Networks, Inc., The Madison Square Garden Company, and MSG Sports & Entertainment, LLC (collectively, the "MSG Defendants")—have long had a relationship characterized by "animosity." Am. Compl. ¶ 26. Within minutes of Oakley taking his ticketed seat a few rows behind Dolan, MSG security guards approached Oakley and demanded that he leave, asking "why [Oakley was] sitting so close to Mr. Dolan." Am. Compl. ¶ 35. Oakley did not immediately comply and questioned why he was being forced to leave. The situation quickly escalated. The security guards threw Oakley to the floor twice, handcuffed him, and escorted him to police waiting outside the venue, who placed him under arrest.

That evening and the next day, Defendants published statements about the incident on the Knicks' public relations Twitter account. Defendants tweeted that Oakley had been "ejected" because he had "behaved in a highly inappropriate and completely abusive manner." Am. Compl. ¶ 58. They further tweeted that "[e]verything [Oakley] said since the incident is pure fiction" and that Defendants' account was "consistent" with "[e]very single statement" from witnesses about Oakley's "abusive" behavior. Am. Compl. ¶ 62.

Two days after the incident, Defendant Dolan appeared on ESPN's *The Michael Kay Show* and made similar statements: Oakley "has a problem with anger. He's both physically and verbally abusive. He may have a problem with alcohol, we don't know, right." Am. Compl. ¶ 69; *Oakley v. Dolan*, No. 17-CV-6903 (RJS), 2020 WL 818920, at *2 (S.D.N.Y. Feb. 19, 2020) (quoting video of show that was incorporated by reference into the amended complaint). Dolan claimed that Oakley had arrived to the game "impaired" and was "drink[ing] beforehand," and then proceeded to "abuse[]" the "security people," the "service people," and other staff in a manner "with racial overtones, sexual overtones." Am. Compl. ¶¶ 69, 72.

---

[4] Unless otherwise noted, in quotations from caselaw, this Order omits all alterations, brackets, citations, emphases and internal quotation marks.

**I. Defamation**

Oakley asserts that Defendants defamed him both by "falsely accusing him of being an alcoholic" and "of having committed the serious crime of assault against members of the public" in the Knicks' tweets and Dolan's interview. Am. Compl. ¶¶ 97, 103. For substantially the same reasons as were cited by the District Court, we conclude that these claims fail as a matter of law.

Under New York law, defamation comprises both slander (for injurious spoken statements) and libel (for injurious written statements). Oakley alleges claims for slander against all Defendants and for libel against only the MSG Defendants. Both types of claims require pleading the same basic elements: (1) a defamatory statement of fact about the plaintiff; (2) publication to a third party; (3) fault by the defendant; (4) falsity of the statement; and (5) special damages or per se actionability. *See Palin v. New York Times Co.*, 940 F.3d 804, 809 (2d Cir. 2019) (libel); *Sleepy's LLC v. Select Comfort Wholesale Corp.*, 909 F.3d 519, 528 (2d Cir. 2018) (slander).

First, regarding Oakley's theory that Defendants falsely accused Oakley of alcoholism, the amended complaint fails to plead actual malice as required. Because Oakley is a public figure, his complaint satisfies the fault element of defamation only if he plausibly alleges that Defendants acted with "actual malice." In defamation law, "actual malice" means only "with knowledge that [the challenged statement] was false or with reckless disregard of whether it was false or not." *Palin*, 940 F.3d at 809.

We agree with the District Court that the amended complaint lacks sufficient allegations from which to infer that Defendants knew or recklessly disregarded that their statements about Oakley's drinking were false. For instance, the amended complaint bases the alcoholism theory of defamation on alleged statements by Dolan that witnesses at the Garden claimed Oakley had appeared to be impaired; that Oakley said on television that he had been drinking before the incident; and that Dolan questioned on ESPN whether Oakley might "have a problem," commenting further, "we don't know, right." Am. Compl. ¶ 69; *Oakley*, 2020 WL 818920, at *2 (quoting video incorporated by reference). The Knicks' tweets also stated ambiguously that Oakley might need "help." Am. Compl. ¶ 58. To the extent that such statements can be deemed false, the amended complaint contains insufficient allegations that Defendants knew or recklessly disregarded that they were false, as is necessary to establish actual malice. *See Palin*, 940 F.3d at 810 ("When actual malice in making a defamatory statement is at issue, the critical question is the *state of mind* of those responsible for the publication.") (emphasis added).

4

Second, regarding Defendants' alleged false accusations of assault, we endorse the District Court's ruling that the amended complaint does not adequately plead that these statements are per se actionable or resulted in special damages. Oakley bases this "assault" theory on Defendants' numerous statements that during the incident he acted "abusive[ly]" toward the public, security, and staff at MSG, and that those "abusive" actions eventually led to his arrest.

As the District Court explained, only four types of statements are per se actionable under New York law: those that "imput[e] unchastity to a woman," assert that a plaintiff has a "loathsome disease," tend to injure him in his profession, or charge a plaintiff with a serious crime. *Liberman v. Gelstein*, 590 N.Y.S.2d 857, 860 (1992). The statements complained of here fall into none of these categories. Plainly, they do not concern chastity. Nor do they concern a "loathsome disease," a traditional common law category limited to "venereal" or "communicable diseases" that are "lingering and chronic" and that impel others to avoid contact with the disease "carrier." *See* Restatement (Second) of Torts § 572 (noting that "decided cases have not gone beyond these diseases," including syphilis, gonorrhea, or leprosy).

The amended complaint also fails to allege that the statements injured Oakley in his trade, as it does not identify what Oakley's cognizable trade is. Although Oakley argues the statements led an addiction clinic to cancel a scheduled paid appearance, Oakley does not allege that these occasional appearances are his trade. He simply alleges that he is a former professional athlete. The complained-of charges of abusive behavior bear only on his general character and not on his ability to perform any job. *See Liberman*, 590 N.Y.S.2d at 861 (an injury-to-trade statement must do more than impugn a plaintiff's general "character or qualities," rather, it must specifically impair the "conduct of [his] business" or "a matter of significance" in his trade).

Finally, the statements fail to portray Oakley as having committed a serious crime. *See id.* ("[T]he law distinguishes between serious and relatively minor offenses, and only statements regarding the former are [per se] actionable."). As the District Court found, the statements do not support an inference that Oakley's actions amounted to criminal assault. *See Oakley*, 2020 WL 818920, at *7 ("[Defendants'] statements that Oakley was 'abusive' . . . do not give rise to the implication that Oakley committed [criminal] assault."). While some of the statements reference his arrest, they also suggest that the only consequence for the incident should be a focus on Oakley's well-being, not any of the legal consequences that usually attend a serious crime. *See* Am. Compl. ¶ 58 (quoting Defendants' tweet that Oakley was "being arrested by the New York City Police

5

Department. He was a great Knick and we hope he gets some help soon"); Am. Compl. ¶ 69 (quoting Dolan's statement, "When you have issues like this, the first step for anybody is to ask for help").

In the absence of per se actionability, Oakley must instead plead that the statements resulted in special damages, or "actual losses" that were specifically and "causally related to the alleged tortious act." *L.W.C. Agency v. St. Paul Fire & Marine Ins. Co.*, 125 509 N.Y.S.2d 97, 97 (2d Dep't 1986). The amended complaint fails to propose or support any such theory. At most, it alleges that the addiction clinic canceled Oakley's paid appearance, because some statements portrayed him as "an *alcoholic*" who would not be "appropriate" for the clinic's patients to meet. Am. Compl. ¶ 93. Such an allegation is tied to Oakley's theory about Defendants' false accusations about his alcoholism, not about his alleged commission of assault.

As no more than these conclusions are necessary to determine that Oakley's defamation allegations fail to state a claim under New York law, we go no further. We accordingly affirm the District Court's dismissal of these claims.

**II. Denial of Public Accommodation**

Oakley alleges in the alternative that Defendants violated the ADA and NYSHRL by "denying him access to the Garden based on their perception that he suffers from alcoholism," a protected disability. Am. Compl. ¶¶ 141, 146. To successfully plead this claim under either statute a plaintiff must allege "(1) that she is disabled . . . ; (2) that defendants own, lease, or operate a place of public accommodation; and (3) that defendants discriminated against her by denying her a full and equal opportunity to enjoy" the public accommodation. *Camarillo v. Carrols Corp.*, 518 F.3d 153, 156 (2d Cir. 2008); *Rodal v. Anesthesia Grp. of Onondaga, P.C.*, 369 F.3d 113, 117 n.1 (2d Cir. 2004) ("New York State disability discrimination claims are governed by the same legal standards as federal ADA claims.").

As the District Court correctly held, the amended complaint fails to plead plausibly that Defendants acted against Oakley as a result of his perceived alcoholism, as opposed to his alleged *inebriation at that time* and the resulting disruption. *See Klaper v. Cypress Hills Cemetery*, 593 F. App'x 89, 90 (2d Cir. 2015) (rejecting discrimination claim where defendant's actions could be explained as reaction to plaintiff's inability to work, as opposed to plaintiff's alcoholism). At most, the amended complaint alleges that Dolan speculated after the fact that Oakley had a problem with alcohol. But Dolan's statements (as alleged in the amended complaint) described that, at the time of the incident

6

itself, staff were concerned that Oakley appeared "impaired" because he had been drinking right "beforehand." Am. Compl. ¶ 69. These allegations fail to show that, in removing him from the Garden that evening, Defendants believed, let alone discriminated against him because they believed, that Oakley was an alcoholic.

### III. False Imprisonment

Finally, Oakley seeks reinstatement of his false imprisonment claim, but only to the extent that the public accommodation claim is reinstated. This is because, for the public accommodation claim to be viable, Oakley must allege that Defendants' "confinement" of him was not "privileged." *McGowan v. United States*, 825 F.3d 118, 126 (2d Cir. 2016). Oakley's theory is that the security guards' detention of him was not privileged when Defendants acted for unlawful discriminatory reasons (that is, on the basis of his alcoholism), in violation of the ADA and NYSHRL. Because we affirm the dismissal of those claims, we also affirm the dismissal of Oakley's false imprisonment claim.

* * *

For the foregoing reasons, the District Court's judgment is **AFFIRMED** in part by this Order, and **REVERSED** in part and the case **REMANDED** as set forth in the accompanying Opinion.

FOR THE COURT:

Catherine O'Hagan Wolfe, Clerk of Court

7