Radiation Oncology Servs. of Cent. N.Y., P.C. v Our Lady of Lourdes Mem. Hosp., Inc. (2023 NY Slip Op 06019)

Radiation Oncology Servs. of Cent. N.Y., P.C. v Our Lady of Lourdes Mem. Hosp., Inc.

2023 NY Slip Op 06019

Decided on November 22, 2023

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:November 22, 2023

CV-22-1968
[*1]Radiation Oncology Services of Central New York, P.C., et al., Appellants-Respondents,
v
Our Lady of Lourdes Memorial Hospital, Inc., et al., Respondents-Appellants.

Calendar Date:October 19, 2023

Before:Lynch, J.P., Aarons, Pritzker, McShan and Mackey, JJ.

Leberman Law, Syracuse (William J. Leberman of counsel) and Goldberg Segalla, Buffalo (Meghan M. Brown of counsel), for appellants.
Hinman, Howard & Kattell, LLP, Binghamton (Paul T. Sheppard of counsel), for respondents.

Lynch, J.P.
Cross-appeals from an order of the Supreme Court (Mark G. Masler, J.), entered September 29, 2022 in Cortland County, which, among other things, partially denied plaintiffs' motion for summary judgment.
As explained in our prior decision, plaintiff Michael J. Fallon is a radiation oncologist and the sole shareholder of plaintiff Radiation Oncology Services of Central New York, P.C. (hereinafter ROSCNY) (148 AD3d 1418 [3d Dept 2017]). In 2001, ROSCNY entered into a written coverage agreement with defendant Our Lady of Lourdes Memorial Hospital, Inc. (hereinafter Lourdes) under which ROSCNY was granted the exclusive right to provide oncology services at the hospital, with Fallon serving as medical director.[FN1] In 2013, Lourdes began exploring a professional affiliation with the University of Texas MD Anderson Cancer Center, triggering a review of Lourdes' radiation oncology services. After reviewing Fallon's charts, MD Anderson concluded that his treatment of patients in several cases did not satisfy its Standards Management Plan. Consequently, MD Anderson notified Fallon that he would not be offered participation in its network.
Thereafter, Lourdes retained defendant Jan Dombrowski — a radiation oncologist affiliated with the University of Rochester Medical Center — to conduct an independent review of nine of Fallon's charts. Dombrowski ultimately confirmed quality of care issues in eight. Following receipt of Dombrowski's report, Lourdes precautionarily suspended Fallon's clinical privileges on April 10, 2015 pending a review by an internal investigative committee. Lourdes arranged for oncology services to be provided by locum tenens physicians — i.e., temporary providers — during Fallon's suspension period. Following its review, the investigative committee found certain quality of care issues and recommended the reinstatement of Fallon's clinical privileges, subject to certain conditions. Fallon conditionally resumed work on August 10, 2015, but Lourdes terminated Fallon's and ROSCNY's services the next day, citing breaches of the coverage agreement. Lourdes subsequently contracted with another entity to provide radiation oncology services for the hospital.
Plaintiffs commenced this action asserting causes of action for, among others, breach of contract, wrongful termination, libel and slander. Supreme Court (Rumsey, J.) dismissed one of the causes of action alleging breach of contract, but otherwise denied defendants' motion to dismiss the remainder of the complaint — a determination that was affirmed by this Court on appeal (148 AD3d at 1420). Meanwhile, an extensive discovery process ensued, following which Supreme Court (Masler, J.), as relevant here, granted plaintiffs' motion for summary judgment on their fourth and fifth causes of action, but denied their motion as it pertained to the first and second causes of action. The court also denied defendants' cross-motion for summary judgment in its entirety and granted plaintiffs $10,000 in spoliation [*2]sanctions upon a finding that defendants failed to preserve and produce several documents during the discovery process. These cross-appeals ensued.
The parties all argue that Supreme Court erred in denying their respective motions for summary judgment on the first and second causes of action for breach of the coverage agreement, with plaintiffs maintaining that they are entitled to judgment as a matter of law on these causes of action and defendants asserting that they should have been dismissed. We agree with plaintiffs on this point. The first two causes of action allege, as pertinent here, that Lourdes breached the coverage agreement by refusing to allow ROSCNY to hire its own locum tenens physicians during Fallon's suspension period and instead preemptively hiring such physicians itself, thereby violating plaintiffs' right to be the exclusive providers of oncology services at the hospital. They also allege a breach of the agreement by virtue of Lourdes' failure to allow Fallon to delegate his duties as medical director to another person during his suspension period.
"[T]o establish a cause of action for breach of contract, a party must establish the existence of a contract, the party's own performance under the contract, the other party's breach of its contractual obligations, and damages resulting from the breach" (EDW Drywall Constr., LLC v U.W. Marx, Inc., 189 AD3d 1720, 1722 [3d Dept 2020] [internal quotation marks and citation omitted]; accord Daire v Sterling Ins. Co., 204 AD3d 1189, 1190 [3d Dept 2022]). "[A] written agreement that is complete, clear and unambiguous on its face must be enforced according to the plain meaning of its terms" (Greenfield v Philles Records, 98 NY2d 562, 569 [2002]; accord Donohue v Cuomo, 38 NY3d 1, 13 [2022]).
The coverage agreement was initially for a three-year period until May 31, 2004, thereafter to be continued "year to year unless terminated" in accord with the agreement.[FN2] Under the agreement, ROSCNY was required to "use its best efforts to recruit, employ and provide the services of that number of [r]adiation [o]ncologists which [wa]s reasonably necessary to meet . . . patient need and the [c]ancer [c]enter's reasonable business requirements," and was authorized to "utilize the services of qualified locum tenens physicians" to satisfy this obligation, provided it "obtain[ed] the prior written approval of the [h]ospital." Lourdes, in turn, agreed that it would not "unreasonably with[o]ld" such approval. The agreement further provided that "[u]nless and until the parties agree otherwise," Fallon would serve as medical director of the hospital's radiation oncology department and, upon prior written approval — which was not to be unreasonably withheld — would have the right to "delegate the performance of [m]edical [d]irector [s]ervices to another [r]adiation [o]ncologist during times of [m]edical [d]irector's unavailability." Lourdes agreed to pay ROSCNY $250 per hour for the medical director services[*3]. Either party could terminate the agreement upon a material breach, provided that the breaching party was given 30 days to cure the breach and failed to do so.
Supreme Court concluded that plaintiffs did not demonstrate their prima facie entitlement to judgment as a matter of law on these causes of action because they did not "establish[ ] that they performed under the contract by attempting to provide locum tenens physician coverage and [to] designate the [m]edical [d]irector upon the suspension of Fallon's credentials by Lourdes." However, the record confirms otherwise, demonstrating that Lourdes hired two locum tenens physicians prior to Fallon's suspension and that Fallon made requests to either allow ROSCNY to contract with these providers or to hire his own locum tenens coverage during the suspension period.
On appeal, defendants take the position that plaintiffs' failure to provide locum tenens physician coverage during Fallon's suspension period discharged the exclusivity provisions of the agreement, authorizing Lourdes to hire its own locum tenens physicians to provide continuity of coverage. Defendants' argument fails for several reasons. First, "the law implies a reasonable time" for performance absent an explicit directive (Savasta v 470 Newport Assoc., 82 NY2d 763, 765 [1993]). Fallon was notified of his suspension on April 10, 2015 and could not reasonably have been expected to implement
a coverage plan as of that date. Second, prior to Fallon's suspension, Lourdes had already hired locum tenens physicians to provide coverage, notwithstanding the prohibition in its credentialing policy on processing applications for clinical privileges to any practitioner not authorized by an exclusive contract. Lourdes then failed to allow ROSCNY to contract with those providers notwithstanding Fallon's prompt request to do so and ROSCNY's express contractual right to "utilize the services of qualified locum tenens physicians" to carry out its contractual obligations [FN3] — a contractual right retained by the company notwithstanding Fallon's precautionary suspension (see A-1 Gen. Contr. v River Mkt. Commodities, 212 AD2d 897, 900 [3d Dept 1995] ["It is a general rule . . . that a party to a contract cannot rely on the failure of another to perform when he (or she) has frustrated or prevented the performance"]). Third, even if plaintiffs did breach the agreement as alleged, plaintiffs were not given 30 days to cure the breach. Accordingly,
the record establishes that Lourdes breached the exclusivity provision of the coverage agreement by hiring locum tenens providers directly and failing to allow ROSCNY to contract with such providers.[FN4]
As for the alleged failure to allow Fallon to delegate his duties as medical director to another provider during his suspension, the third amended coverage agreement expressly provided him that right, subject to prior written approval by Lourdes, which was not to be unreasonably withheld.[FN5] In an April 20, 2015 email [*4]to one of Lourdes' attorneys, Fallon's attorney indicated that he wished to delegate his medical director duties to one of the locum tenens physicians Lourdes had hired prior to his suspension. In a subsequent email five days later, Fallon's attorney further revealed that Fallon had "3 CVs for the full time position [of] [m]edical [d]irector and needs assurances of the hospital's cooperation if he is to start [i]nterviews and site visits." Defendants, in their appellate brief, state that Fallon "never provided a single qualified and credentialed [medical director] delegate during his suspension," thereby justifying their withholding of consent to delegate his medical director duties. The record pages cited for this proposition do not actually support it. In any event, defendants' argument does not adequately account for the failure to allow ROSCNY to contract with the locum tenens physicians hired directly by Lourdes so as to enable Fallon to delegate his medical director responsibilities to one of them. In these circumstances, plaintiffs have established that Lourdes breached the coverage agreement and defendants have not established a triable issue of fact in opposition (see A.E. Rosen Electrical Co., Inc. v Plank, LLC, 181 AD3d 1080, 1081-1082 [3d Dept 2020]; George S. May Intern. Co. v Thirsty Moose, Inc., 19 AD3d 721, 722 [3d Dept 2005]). Accordingly, summary judgment should be awarded to plaintiffs on their first and second causes of action. However, plaintiffs' third cause of action alleging Lourdes' breach of the implied covenant of good faith and fair dealing cannot be maintained because the alleged breach is "intrinsically tied to the damages allegedly resulting from a breach of the contract" (Deer Park Enters., LLC v Ail Sys., Inc., 57 AD3d 711, 712 [2d Dept 2008] [internal quotation marks and citation omitted]). Accordingly, we agree with defendants that this cause of action is duplicative of the breach of contract claims and should be dismissed.
We reject defendants' argument that Supreme Court erred in granting plaintiffs summary judgment on their fourth and fifth causes of action alleging wrongful termination of the coverage agreement. In the August 11, 2015 letter notifying Fallon that Lourdes was terminating the coverage agreement, Lourdes alleged that Fallon had breached the agreement by advising that he would not provide oncology services in the afternoons and would not be available for meetings during that time frame. The letter also alleged a breach by virtue of Fallon's decision to refer certain patients to different cancer institutions for treatment rather than providing such treatment himself. Defendants do not dispute that they failed to give Fallon 30 days to cure these alleged breaches, but maintain that they were not required to because his actions in this regard constituted an anticipatory repudiation of the coverage agreement. We are unpersuaded.
"Anticipatory repudiation occurs when a party attempts to avoid its obligations [*5]by advancing an untenable interpretation of the contract, or communicates its intent to perform only upon the satisfaction of extracontractual conditions. . . . Whether such a repudiation took place is a factual determination and heavily dependent upon a determination of whether a breaching party's words or deeds are unequivocal" (Fonda v First Pioneer Farm Credit, ACA, 86 AD3d 693, 694-695 [3d Dept 2011] [internal quotation marks, brackets, ellipsis and citations omitted]; see Plastokit [Prod. 1986], Ltd. v American Bio Medica Corp., 105 AD3d 1115, 1116 [3d Dept 2013]). "To support [a] claim of anticipatory repudiation, there must be an unqualified and clear refusal to perform with respect to the entire contract" (O'Connor v Sleasman, 37 AD3d 954, 956 [3d Dept 2007] [emphasis added; internal quotation marks and citation omitted], lv denied 9 NY3d 806 [2007]).
Supreme Court concluded that "Fallon's denial of Lourdes's request that ROSCNY provide physician coverage during all business hours was not a breach of the contract, which plainly and unambiguously provided the [m]edical [d]irector, i.e., Fallon, with sole authority over patient scheduling and, consequently, the hours during which physician coverage is necessary." We agree with Supreme Court's interpretation of the contract, which did not expressly obligate ROSCNY to provide full-time coverage. Rather, the agreement obligated ROSCNY to use its best efforts to "recruit, employ and provide the services of that number of [r]adiation [o]ncologists which [wa]s reasonably necessary to meet . . . patient need and the [c]ancer [c]enter's reasonable business requirements during [its] business hours," which were from 7:00 a.m. to 3:30 p.m.[FN6] Fallon, in turn, was granted authority over scheduling the operations of the department, including the coordination of patient care, and ROSCNY was granted the right to perform its services "free of any specific direction or control" by Lourdes.
Although defendants argue that the coverage agreement "plainly and unambiguously required ROS[C]NY to provide full-time coverage in the radiation oncology department during the [c]ancer [c]enter'[s] business hours," the agreement, as amended, contains no express provision requiring full-time coverage. Section II, paragraph 1, part (d) of the original agreement provided that Fallon would be a "full-time provider of radiation oncology services to patients." In 2011, the coverage agreement was amended, reducing Fallon's services as medical director to five hours per month and permitting him to maintain a radiation oncology practice in Cortland County without being in violation of a non-compete provision. Notably, after December 1, 2012, Fallon was the only radiation oncologist on staff at Lourdes through his suspension on April 10, 2015. Even so, the final coverage agreement was last amended in October 2014, deleting the original requirement that Fallon be a full-time provider of oncology services to Lourdes and increasing his [*6]medical director services at Lourdes to no more than 30 hours per month, while continuing his Cortland County practice. The point is that Lourdes contractually acquiesced to Fallon's schedule for several years, a schedule premised on Fallon's decision that afternoon coverage was unnecessary due to minimal patient volume. Although defendants highlight that Fallon was told, as early as December 2014, that Lourdes expected him to provide full-time coverage — a sentiment that was also repeated shortly before the reinstatement of his clinical privileges — his refusal to do so does not amount to an anticipatory repudiation of the agreement under the circumstances presented.
The same is true for the alleged breach stemming from Fallon's refusal to treat certain patients upon his return from suspension. In that regard, the record confirms that Fallon decided that certain patients should be treated elsewhere due to his disagreement with the care being provided by the locum tenens physicians. He also put certain cases on hold until the treatment plans could be reviewed by another physician, believing that this was required by the actual conditions of his reinstatement. This hardly constitutes the type of unequivocal repudiation of the entire contract necessary to support a claim for anticipatory repudiation. Accordingly, given Lourdes' immediate termination of the contract without providing the required 30-day cure period, Supreme Court properly granted summary judgment to plaintiffs on their claims for wrongful termination (see East Empire Constr. Inc. v Borough Constr. Group LLC, 200 AD3d 1, 6-7 [1st Dept 2021]; Rebh v Lake George Ventures, Inc., 223 AD2d 986, 987 [3d Dept 1996]).
That said, we agree with defendants that Supreme Court erred in denying their cross-motion for summary judgment on their fourth and sixth affirmative defenses seeking to dismiss plaintiffs' defamation claims. Supreme Court determined that plaintiffs provided "convincing evidence" that the Lourdes defendants made statements about the quality of care concerns presented in the MD Anderson and Dombrowski reports "motivated solely by a desire" to terminate the coverage agreement and proceed with an affiliation with MD Anderson. The court further determined that Dombrowski prepared his report under the direction of Lourdes' counsel, including false statements in furtherance of that goal. The record does not bear out that analysis.
"A claim of defamation requires proof that the defendant made a false statement, published that statement to a third party without privilege, with fault measured by at least a negligence standard, and the statement caused special damages or constituted defamation per se" (Partridge v State of New York, 173 AD3d 86, 90 [3d Dept 2019] [internal quotation marks and citations omitted]; see Roche v Claverack Coop. Ins. Co., 59 AD3d 914, 916 [3d Dept 2009]). "[P]ublication of an untrue statement may be defamatory per se if it imputes incompetence, incapacity or [*7]unfitness in the performance of one's profession [and it] amount[s] to an attack on [a] plaintiff's professional ability" (Clemente v Impastato, 274 AD2d 771, 773 [3d Dept 2000]; see Matter of Barra v County of Tompkins, 125 AD3d 1237, 1238 [3d Dept 2015]).
Pertinent here, "[c]ourts have long recognized that the public interest is served by shielding certain communications, though possibly defamatory, from litigation, rather than risk stifling them altogether" (Liberman v Gelstein, 80 NY2d 429, 437 [1992]). There are three separate qualified privileges in play here. The first is the "common interest" privilege, which "extends to a communication made by one person to another upon a subject in which both have an interest" (id. [internal quotation marks and citation omitted]; see Shapiro v Health Ins. Plan of Greater N.Y., 7 NY2d 56, 60-61 [1959]; Mughetti v Makowski, 162 AD3d 1444, 1445-1446 [3d Dept 2018]; Curren v Carbonic Sys., Inc., 58 AD3d 1104, 1106 [3d Dept 2009]). Public Health Law § 2805-j, which pertains, in part, to medical malpractice prevention programs, shields a person from civil liability when providing pertinent information "in good faith and without malice" (Public Health Law § 2805-j [2]). More generally, with respect to the practice of medicine, Education Law § 6527 (5) similarly shields a person from civil liability when communicating information regarding the qualifications or fitness of a physician, unless the "information . . . is untrue and communicated with malicious intent." "The shield provided by a qualified privilege may be dissolved if [the] plaintiff can demonstrate that [the] defendant spoke with 'malice' " (Liberman v Gelstein, 80 NY2d at 437 [citation omitted]; see Public Health Law § 2805-j [2]; Education Law § 6527 [5]). Consequently, if a defendant makes a prima facie showing that the challenged statements were conditionally privileged, the burden shifts to the plaintiff to "prove that [the defendant] acted out of personal spite or ill will, with reckless disregard for the statements' truth or falsity, or with a high degree of belief that their statements were probably false" (Cusimano v United Health Servs. Hosps., Inc., 91 AD3d 1149, 1150 [3d Dept 2012] [internal quotation marks and citation omitted], lv denied 19 NY3d 801 [2012]; see Lieberman v Gelstein, 80 NY2d at 438; Scott v Thayer, 160 AD3d 1175, 1177 [3d Dept 2018]).
The record demonstrates that the challenged statements attributable to the Lourdes defendants were made during the course of a bona fide internal professional review of Fallon's medical charts, a subject in which each speaker shared a common interest, triggering all three qualified privileges. Given the quality of care concerns raised by MD Anderson, the hospital's decision to secure an independent review by an expert (Dombrowski) reflects due diligence, not malice. That is particularly so given that Fallon's appointment to the hospital's medical staff was subject to renewal in March 2015 [*8]under the hospital's Credentials Policy. That the Lourdes defendants commented on the findings in the report in no way raises a factual issue of malice under either the common-law or constitutional standards (see Lieberman v Gelstein, 80 NY2d at 438; Stillman v Ford, 22 NY2d 48, 53-54 [1968]; Cusimano v United Health Servs. Hosps., Inc., 91 AD3d at 1150; Cooper v Hodge, 28 AD3d 1149, 1150-1151 [4th Dept 2006]).
We reach the same conclusion with respect to Dombrowski. In finding questions of fact, Supreme Court referenced the allegations in the complaint, but unsubstantiated allegations contained in pleadings are not "evidentiary proof in admissible form" sufficient to create a triable issue of fact in opposition to a summary judgment motion (Zuckerman v City of New York, 49 NY2d 557, 562 [1980]). As stated in our earlier decision, a summary judgment motion must be based on competent evidence (Radiation Oncology Servs. of Cent. N.Y., P.C. v Our Lady of Lourdes Mem. Hosp., Inc., 148 AD3d at 1420). In fact, the record conclusively refutes the allegation that Lourdes' attorney asked Dombrowski to add harsher language to the report. To the contrary, Dombrowski testified in his deposition that counsel merely asked him to revise the report to address one way or the other whether Fallon's treatment in the cases under review comported with the applicable standard of care — certainly an appropriate request under the circumstances. Moreover, Dombrowski confirmed that he deleted references to the MD Anderson review from his report, without any outside direction to do so, in an attempt to make the report more generic. Nor, contrary to Supreme Court's observation, were Dombrowski's findings "significantly at odds" with MD Anderson's findings in eight of the nine cases reviewed. Actually, the reverse is true. Even though Dombrowski was not provided with copies of the MD Anderson reports, he agreed with MD Anderson that there were quality of care issues in all but one case. Both Dombrowski and MD Anderson agreed that Fallon delivered excessive doses of radiation to healthy tissue in the cases of concern. Under the circumstances presented, we conclude that plaintiffs did not demonstrate a triable issue of fact on the issue of malice and Supreme Court should have dismissed plaintiffs' sixth through ninth causes of action.
Defendants additionally contend that they are entitled to summary judgment on their fourth and fifth counterclaims, which seek costs and counsel fees under Lourdes' Medical Credentialing Policy. That policy states, as relevant here, that "[i]f an applicant institutes legal action challenging any professional review action and does not prevail, he or she will reimburse the [h]ospital . . . for all costs incurred in defending such legal action, including reasonable attorneys' fees." Under the credentials policy, a "professional review action has the meaning defined in the [Health Care Quality Improvement Act]." The Health Care Quality Improvement [*9]Act defines a professional review action as "an action . . . of a professional review body which is taken or made in the conduct of professional review activity, which is based on the competence or professional conduct of an individual physician . . . and which affects (or may affect) adversely the clinical privileges . . . of the physician" (42 USC § 11151 [9]). We conclude that defendants are not entitled to costs or counsel fees under the credentials policy because plaintiffs actually prevailed on the breach of contract and wrongful termination causes of action, notwithstanding the dismissal of the defamation claims.
Finally, after considering the totality of the circumstances, we reject plaintiffs' arguments directed at Supreme Court's failure to impose more stringent sanctions regarding a class of documents pertaining to Lourdes' communications with MD Anderson, which were not originally disclosed during the course of discovery. We cannot conclude that Supreme Court's failure to impose sanctions with respect to the withholding of these documents constitutes "a clear abuse of discretion" under the circumstances presented (Parkis v City of Schenectady, 211 AD3d 1444, 1447 [3d Dept 2022]).
Aarons, Pritzker, McShan and Mackey, JJ., concur.
ORDERED that the order is modified, on the law, without costs, by reversing so much thereof as denied plaintiffs' motion seeking summary judgment on the issue of liability on the first and second causes of action and denied defendants' cross-motion for summary judgment seeking dismissal of the third, sixth, seventh, eighth and ninth causes of action; motion and cross-motion granted to said extent; and, as so modified, affirmed.

Footnotes

Footnote 1: This agreement was last amended in 2014.

Footnote 2: The provisions of the agreement cited in this decision were in effect upon the last amendment.

Footnote 3: Defendants maintain that there is no record evidence that they affirmatively precluded ROSCNY from contracting with the locum tenens physicians Lourdes hired and no evidence that ROSCNY made any efforts in that regard. However, this argument ignores that the coverage agreement only allowed ROSCNY to utilize locum tenens physicians upon the prior written approval of Lourdes. As such, ROSCNY could not contract with the locum tenens physicians Lourdes had hired absent its consent. Defendants are correct that plaintiffs have cited no evidence demonstrating that Lourdes ever responded to Fallon's request to contract with the locum tenens physicians directly. But that is precisely the point. By failing to respond (i.e., to give consent), defendants made it impossible for ROSCNY to perform.

Footnote 4: Defendants argue that they had a reasonable excuse for declining Fallon's request to employ the services of two locum tenens physicians he sought to utilize after his suspension commenced insofar as they could not provide complete coverage. Even so, defendants do not account for the failure to allow ROSCNY to contract with the locum tenens providers hired by Lourdes directly.

Footnote 5: The coverage agreement stated that Fallon's delegation rights would be triggered upon his "unavailability, e.g., being outside the local area." Although defendants argued below that the example provided was the exclusive circumstance triggering Fallon's delegation rights, they do not take this position on appeal, thereby abandoning any such argument (see Matter of Restrepo [Commissioner of Labor], 218 AD3d 975, 976 n [3d Dept 2023]).

Footnote 6: As a matter of contract interpretation, we reject defendants' argument that the phrase "reasonably necessary" as used in this provision does not modify the phrase "business hours" and, therefore, did not give ROSCNY the right to limit the hours when patients would be treated.