| **Koffel v Cook** |
|:---:|
| 2024 NY Slip Op 31694(U) |
| May 14, 2024 |
| Supreme Court, New York County |
| Docket Number: Index No. 157596/2022 |
| Judge: J. Machelle Sweeting |
| Cases posted with a "30000" identifier, i.e., 2013 NY Slip Op 30001(U), are republished from various New York State and local government sources, including the New York State Unified Court System's eCourts Service. |
| This opinion is uncorrected and not selected for official publication. |

# SUPREME COURT OF THE STATE OF NEW YORK
# NEW YORK COUNTY

PRESENT: **HON. J. MACHELLE SWEETING**

*Justice*

PART      62

-----------------------------------------------------------------------------X

QUINCY KOFFEL,

                   Plaintiff,

              - v -

SABRINA COOK, JEFFREY GAMILS, JAY MILLER, in their individual and official capacities, CITY OF NEW YORK, NEW YORK CITY DEPARTMENT OF EDUCATION

                   Defendant.

-----------------------------------------------------------------------------X

| | |
|---|---|
| **INDEX NO.** | 157596/2022 |
| **MOTION DATE** | 01/20/2023 |
| **MOTION SEQ. NO.** | 001 |

**DECISION + ORDER ON MOTION**

The following e-filed documents, listed by NY St Cts Elec Filing ("NYSCEF") document number (Motion 001) 9, 10, 11, 12, 13, 14, 15, 16, 17, 18, 19, 20, 21, 22, 23, 24, 25, 26, 27, 28, 29, 30

were read on this motion to/for                   DISMISSAL               .

Quincy Koffel ("plaintiff") brings this action against defendants the City of New York ("City"); the New York City Department of Education ("DOE"); Sabrina Cook ("Cook"), Jeffrey Gamils ("Gamils") and Jay Miller ("Miller") (hereinafter referred to together in their individual capacities as the "individual defendants"). Plaintiff alleges that defendants conspired to defame her. Plaintiff further asserts that the individual defendants tortiously interfered with her contracts with DOE-approved third-party vendors and affected her prospective economic opportunities of working with those same vendors in the future.

Defendants move to dismiss the complaint under Civil Practice Law and Rules ("CPLR") CPLR 3211 (a) (1), (5) and (7).

157596/2022   KOFFEL, QUINCY vs. COOK, SABRINA ET AL
Motion No. 001

Page 1 of 19

## BACKGROUND FACTS

Unless noted otherwise, the facts below are taken from the Complaint, and are accepted as true for purposes of this motion (*Sokoloff v Harriman Estates Dev. Corp.*, 96 NY2d 409, 416 [2001]).

Plaintiff alleges that she provided different services to DOE schools for approximately 20 years as an independent contractor by contracting with DOE-approved vendors (NYSCEF Doc No. 2, complaint, ¶¶ 18-19, 21-22). Some of the services that plaintiff and the approved vendors provided included, among other things, professional development for teachers and other staff, student engagement, and curriculum development (*id.*, ¶ 20).

Plaintiff alleges that she was able to work for DOE because she had passed all required background checks performed by the Office of Personnel Investigation ("OPI"), which is the division at DOE responsible for clearing persons to work for DOE's Galaxy database (*id.*, ¶¶ 23, 41). Plaintiff alleges that she was and is currently listed as a Person Not on Budget ("PNOB") at multiple schools (*id.*). Generally, if there is a problem code associated with a person's PNOB status, or if there is a revocation of the clearance, the Galaxy database will red flag and drop such individual from the PNOB system. That individual is then automatically removed from the DOE's Galaxy database and the schools are immediately alerted to such status change (*id.*, ¶ 46). Plaintiff alleges that the determination to remove someone's PNOB status is solely made by OPI (*id.*).

Plaintiff is also the founder and president of multiple DOE-approved vendors (*id.*, ¶ 26). In 2019, the principal of the School for Tourism Hospitality ("STH") allegedly contacted plaintiff concerning a vacancy at the school (*id.*, ¶ 25). Cook, who was the deputy superintendent at the time, allegedly told plaintiff that she wanted her husband to fill the vacant position at STH by securing his employment through plaintiff's companies (*id.*, ¶ 26). STH's principal, however,

157596/2022   KOFFEL, QUINCY vs. COOK, SABRINA ET AL
Motion No. 001

Page 2 of 19

allegedly informed plaintiff that the current superintendent would likely frown on hiring Cook's husband based on nepotism and a conflict of interest DOE (*id.*, ¶ 27).

In December 2019, Cook was promoted to superintendent. This promotion allegedly caused plaintiff to worry that Cook would use her new position to retaliate against her if she refused to hire her husband (*id.*, ¶ 29). Nonetheless, plaintiff ultimately decided not to hire Cook's husband pursuant to DOE's rules (*id.*).

Plaintiff alleges that, beginning in April 2021, defendants Cook, Miller, and Gamils conspired to prevent plaintiff from working in DOE schools, through deceit and duplicity, by deactivating multiple vendors that she contracted with in the DOE system (*id.*, ¶¶ 31-32, 37).

Miller's Email and Phone Call

On June 15, 2021, Miller sent an email to certain vendors stating: "The DOE has become aware of what appears to be a relationship between you, your entities and other entities that were operated by an individual name [sic] Quincy Koffel" (*id.*, ¶ 33).

In July 2021, Miller and multiple DOE representatives had a phone call with one of the vendors that employed plaintiff. During this call, Miller allegedly stated that plaintiff was problem coded and was ineligible to work as an independent contractor (*id.*, ¶ 34). Miller then allegedly told the vendor that it had been deactivated as an approved vendor as a result of employing plaintiff, that plaintiff was not to seek employment with other vendors, and that any vendor that employed plaintiff would be deactivated by DOE (*id.*). Plaintiff alleges that, when making this statement, Miller was acting in concert with defendants Cook and Gamils (*id.*, ¶ 35). Yet, plaintiff alleges that she was not actually problem coded in any DOE system, and defendants' deactivation of the vendors that plaintiff worked for served as a de facto problem code because it restrained

157596/2022  KOFFEL, QUINCY vs. COOK, SABRINA ET AL
Motion No.  001

Page 3 of 19

3 of 19

[* 3]

plaintiff's economic opportunities within the DOE (*id.*, ¶ 37). Plaintiff alleges that Miller, the Chief Administrator of the Division of Contracts and Purchasing at DOE, failed to verify the claims, allegedly made to him by Cook and/or Gamils, that plaintiff was problem coded by OPI or that she was no longer permitted to work at DOE (*id.*, ¶¶ 5, 36).

Gamils' Email

On October 6, 2021, Gamils, allegedly at Cook's direction, sent an email to the principals of four schools where plaintiff had previously worked (*id.*, ¶¶ 38, 40). The email stated:

> Good afternoon,
>
> I have been notified by the Office of Personal Investigations (OPI) that a vendor/volunteer by the name of Quincy Koffel is currently active on your [G]alaxy as Person Not on Budget [PNOB]. This individual is subject to a substantiated SCI report and currently has a problem code banning her presence in our buildings or doing any business with the DOE. This problem code was effective as of 3/12/2020. Please be advised that this person must to [sic] be deleted from PNOB on [G]alaxy and she is not permitted to volunteer or do any business with the DOE. The system should have made her ineligible automatically but apparently there is a data entry error somewhere in the system.
>
> I need to confirm with OPI when this correction is made. If possible, please update me as to when she is removed from your Galaxy. Please feel free to contact me with any questions (*id.*, ¶ 41).

Plaintiff alleges that Gamils and Cook were aware the information was false because plaintiff was not problem coded in Galaxy and was not banned from entering DOE buildings or doing business with DOE (*id.*, ¶¶ 42-43). Plaintiff alleges that Gamils and Cook intentionally misled the principals in order to retaliate against her (*id.*, ¶¶ 44-45). The email sent by Gamils and Cook allegedly prevented plaintiff from continuing her career with DOE, caused her economic harm, and resulted in her loss of an internship at the Bronx High School for Visual Art (*id.*, ¶ 48).

157596/2022   **KOFFEL, QUINCY vs. COOK, SABRINA ET AL**
Motion No. 001

**Page 4 of 19**

4 of 19

<u>This Action</u>

On September 7, 2022, plaintiff commenced this action against all defendants. In her first cause of action, plaintiff alleges that defendants tortiously interfered with contract when they deactivated the DOE-approved vendors she contracted with.  In her second cause of action, plaintiff alleges that defendants tortiously interfered with prospective economic advantage by intentionally communicating materially false and harmful information to DOE personnel. Finally, in her third cause of action, plaintiff alleges that defendants defamed her by publishing false information about her status at DOE.  In response to the complaint, defendants filed the current motion to dismiss.

## **LEGAL STANDARD FOR A MOTION TO DIMISS**

"On a motion to dismiss a cause of action pursuant to CPLR 3211(a)(5) on the ground that it is barred by the statute of limitations, a defendant bears the initial burden of establishing, prima facie, that the time in which to sue has expired" (*Benn v Benn*, 82 AD3d 548, 548 [1st Dept 2011][internal quotation marks and citation omitted]).

Under CPLR 3211(a)(7), the movant has the burden to demonstrate that the complaint, construed liberally in favor of the plaintiff, states no legally cognizable cause of action (*Leon v Martinez,* 84 NY2d 83, 87-88 [1994]; *see also Goshen v Mut. Life Ins. Co. of N.Y.*, 98 NY2d 314, 326 [2002]. Plaintiff is accorded "the benefit of every possible favorable inference" (*Goshen*, 98 NY2d at 326[internal quotation marks and citation omitted]). "Whether the plaintiff will ultimately be successful in establishing [its] allegations is not part of the calculus" (*Greystone Funding Corp. v Kutner*, 121 AD3d 581, 583 [1st Dept 2014][internal quotation marks and citation omitted]).

157596/2022   KOFFEL, QUINCY vs. COOK, SABRINA ET AL
  Motion No.  001

Page 5 of 19

On a "CPLR 3211(a)(1) motion to dismiss on the ground that the action is barred by documentary evidence, such motion may be appropriately granted only where the documentary evidence utterly refutes plaintiff's factual allegations, conclusively establishing a defense as a matter of law" (*Goshen*, 98 NY2d at 326; *see also Art & Fashion Group Corp. v Cyclops Prod., Inc.*, 120 AD3d 436, 438 [1st Dept 2014]). "In order to prevail on a CPLR 3211 (a) (1) motion, the documents relied on must definitively dispose of plaintiff's claim" (*Blonder & Co., Inc. v Citibank, N.A.*, 28 AD3d 180, 182 [1st Dept 2006]). "If the documentary proof disproves an essential allegation of the complaint, dismissal pursuant to CPLR 3211 (a) (1) is warranted even if the allegations, standing alone, could withstand a motion to dismiss for failure to state a cause of action" (*Kolchins v Evolution Mkts., Inc.*, 128 AD3d 47, 58 [1st Dept 2015], *affd* 31 NY3d 100 [2018]). "Judicial records, such as judgments and orders, would qualify as 'documentary,' as should the entire range of documents reflecting out-of-court transactions, such as contracts, deeds, wills, mortgages, and even correspondence" (*Amsterdam Hospitality Group, LLC v Marshall-Alan Assoc., Inc.*, 120 AD3d 431, 432 [1st Dept 2014] [internal quotation marks and citations omitted]). Further, correspondence, such as emails, suffice as documentary evidence for purposes of CPLR 3211(a)(1) (*id.* at 433); *see also Kolchins*, 128 AD3d at 4).

## DISCUSSION

### A. Claims Against the City

In her opposition papers, plaintiff consents to the dismissal of all her claims against the City. Accordingly, all claims against the City are dismissed.

### B. The Defamation Claim Against DOE, Miller, Gamils and Cook

A defamatory statement is one that "tends to expose a person to public contempt, hatred, ridicule, aversion or disgrace" (*Thomas H. v Paul B.*, 18 NY3d 580, 584 [2012]). To prevail in a defamation claim, a plaintiff must show "(1) a false statement that is (2) published to a third party (3) without privilege or authorization and that (4) causes harm, unless the statement is one of the types of publications actionable regardless of harm" (*Stepanov v Dow Jones & Co., Inc.*, 120 AD3d 28, 34 [1st Dept 2014]).

#### The Defamation Claim Against Miller

As a preliminary matter, plaintiff withdrew her defamation claim against Miller for the alleged defamatory statements he made in 2021. Accordingly, the third cause of action for defamation against Miller is dismissed.

#### The Defamation Claim Against Cook, Gamils and DOE

Turning to the remaining defamation claim against Cook and Gamils, plaintiff alleges in her complaint that they intentionally and recklessly disregarded the truth and misled principals by stating that plaintiff was no longer permitted to work with DOE and was problem coded. She

**157596/2022  KOFFEL, QUINCY vs. COOK, SABRINA ET AL**
**Motion No.  001**

**Page 7 of 19**

7 of 19

asserts that Gamils and Cook conspired to retaliate against her because she refused to hire Cook's husband. As to DOE, plaintiff seeks to hold DOE liable under the doctrine of respondeat superior.

In their motion to dismiss, defendants argue that plaintiff's claim for defamation should be dismissed because the documentary evidence conclusively establishes that the statements are true or substantially true and are protected by a qualified privilege.

"Truth is an absolute defense to a cause of action based on defamation" (*Silverman v Clark*, 35 AD3d 1, 12 [1st Dept 2006] [citations omitted]). "'If an allegedly defamatory statement is 'substantially true,' a claim of libel is 'legally insufficient and ... should [be] dismissed'" (*Franklin v Daily Holdings, Inc.*, 135 AD3d 87, 94 [1st Dept 2015], quoting *Biro v Conde Nast*, 883 FSupp2d 441, 458 [SDNY 2012]). "[A] statement is substantially true if the statement would not 'have a different effect on the mind of the reader from that which the pleaded truth would have produced'" (*id.*).

The documentary evidence submitted by defendants does not conclusively show that plaintiff was problem coded or banned from doing business with DOE when Gamils made the statements. On February 10, 2020, the Special Commissioner of Investigation for the New York City School District ("SCI") issued a report regarding their investigation into numerous DOE principals and the plaintiff (NYSCEF Doc No. 13, Liu's affirmation, exhibit B, p. 1). The report concluded that the DOE principals and plaintiff by-passed DOE's procurement requirements to pay a non-DOE-approved vendor (*id.*). This SCI report only recommended that DOE cease doing business with plaintiff and asked that SCI be notified if DOE takes any action with respect to plaintiff (*id.*, p. 8). Further, the email dated March 11, 2020 from Karen Antoine, the director of trial units, merely indicated that DOE should terminate plaintiff's work and problem code her profile to ensure that a bar was placed to any and all opportunities for plaintiff with DOE (NYSCEF

157596/2022   KOFFEL, QUINCY vs. COOK, SABRINA ET AL
Motion No. 001

Page 8 of 19

8 of 19

[* 8]

Doc No. 14, Liu's affirmation, exhibit C, pp. 1-2). The email, however, does not conclusively show that those actions against plaintiff were actually taken by DOE or when.

In fact, the sequence of events from the documents submitted are conflicting. Gamil's email at issue explicitly states that as late as October 2021, almost two years after the SCI investigation was concluded and after Karen Antoine's email, the Galaxy system failed to automatically delete plaintiff as a PNOB due to errors in data entry. The documents thus show that plaintiff was still active in the Galaxy system as late as October 2021. Further, the letter sent to plaintiff by Miller on November 16, 2021, explicitly states that "due to the pandemic and the shutdown of city schools at that point in time, a responsibility determination was rendered moot as students were shifted to remote learning" (NYSCEF Doc No. 15, Liu's affirmation, exhibit D, p. 1). The same letter directed plaintiff to respond to the issues in the letter and emphasized that the sufficiency of her response would be considered in connection with plaintiff's ability to do business with DOE. As argued by defendants, these documents do not conclusively show that plaintiff was problem coded in the DOE system in March 2020.

Finally, the printout from OPI that was submitted by defendants does not qualify as documentary evidence (NYSCEF Doc No. 16, Liu's affirmation, exhibit E). "A paper will qualify as 'documentary evidence' only if it satisfies the following criteria: (1) it is 'unambiguous'; (2) it is of 'undisputed authenticity'; and (3) its contents are 'essentially undeniable'" (*VXI Lux Holdco S.A.R.L. v SIC Holdings, LLC*, 171 AD3d 189, 193 [1st Dept 2019][citation omitted]). The printout from OPI is ambiguous because it is unclear from this record, the year that the problem code went into effect or what the other information in the screenshot represents. In any event, even if, *arguendo*, this document qualified as documentary evidence, its contents do not utterly refute plaintiff's factual allegations, as the document merely shows that plaintiff was problem coded for

[* 9]

the 2022-2023 school year (NYSCEF Doc No. 16), and there is no indication that she was problem coded before that year or at the time the alleged defamatory statements were made.

Qualified privilege is another defense of defamation. "It is well established that even if a statement is defamatory, a qualified privilege exists where the communication is made to persons who share a common interest in the subject matter" (*Silverman*, 35 AD3d at 10 [citations omitted]). "The rationale in applying the privilege in these circumstances is that 'so long as the privilege is not abused, the flow of information between persons sharing a common interest should not be impeded'" (*Silverman*, 35 AD3d at 10 [citation omitted]). The common interest privilege has been applied to, among other things, employees of an organization (*Liberman v Gelstein*, 80 NY2d 429, 437 [1992] [citations omitted]).

While statements can be protected by the common interest privilege, the defense can be defeated by malice (*Liberman*, 80 NY2d at 437). "[I]t is the defamation plaintiff who 'would have the burden of showing that a statement is actionable because it was motivated by malice' . . . in order to negate the privilege" (*Stega v New York Downtown Hosp.*, 31 NY3d 661, 673 [2018] [citations omitted]). Plaintiff's complaint thus must contain "sufficient allegations of malice to withstand the motion to dismiss" when a defense of qualified privilege is raised (*Park Knoll Assoc. v Schmidt*, 59 NY2d 205, 210 [1983]).

Under the common-law, "malice mean[s] 'spite or ill will'" (*Liberman*, 80 NY2d at 437 [citations omitted]). However, under the "actual malice" standard established in *New York Times Co. v Sullivan*, actual malice requires "knowledge that [the statement] was false or reckless disregard of whether it was false or not" (*Liberman*, 80 NY2d at 438, quoting *New York Times Co. v Sullivan*, 376 US 254 [1964]). The Court of Appeals recognizes that either the constitutional or common-law standard suffices to "defeat a conditional privilege" (*Liberman*, 80 NY2d at 438).

157596/2022   KOFFEL, QUINCY vs. COOK, SABRINA ET AL
Motion No. 001

Page 10 of 19

10 of 19

[* 10]

Further, "where the plaintiff can demonstrate that the communication made by the defendant was not made in good faith but was motivated solely by malice, the protection provided by the qualified privilege will be inapplicable" (*Phelan v Huntington Tri-Vil. Little League, Inc.*, 57 AD3d 503, 505 [2d Dept 2008]). Malice "refers not to defendant's general feelings about plaintiff, but to the speaker's motivation for making the defamatory statements" (*Pezhman v City of New York*, 29 AD3d 164, 168-169 [1st Dept 2006][internal quotation marks and citation omitted]).

Here, the alleged defamatory statements in Gamils' email are protected by the common interest privilege. Gamils and Cook were both employed by DOE when Gamils sent the email to other DOE personnel. In this email, Gamils informed DOE employees of the substantiated investigation against plaintiff, stated that she was problem coded and was not permitted to volunteer or do any business with the DOE. Gamils' email was, therefore, a communication of information made between persons who shared a common interest in the subject matter. The DOE school principals have a common interest in knowing whether independent contractors, like plaintiff, went through the proper channels of DOE before providing services to their schools. Since plaintiff had a long history of working with different DOE schools, other DOE personnel would have a corresponding interest to ensure that DOE directives were being followed.

Plaintiff's complaint does not sufficiently allege common-law malice to withstand the defense of common interest privilege raised by defendants. Plaintiff has not pleaded sufficient facts to show that "spite or ill will was the 'one and only cause for the publication' as [plaintiff] must, to overcome the qualified privilege" (*Loughlin v de Bary*, 212 AD3d 557, 560 [1st Dept 2023]). As discussed, plaintiff alleges that Cook and Gamils conspired to defame plaintiff by making the statements in Gamil's email as part of a retaliation campaign against her. However, the documentary evidence shows that the statements made in Gamils' email were, at minimum,

157596/2022   KOFFEL, QUINCY vs. COOK, SABRINA ET AL
Motion No.  001

Page 11 of 19

11 of 19

based on an independent SCI investigation against plaintiff that was substantiated against plaintiff, which also recommended that DOE cease doing business with plaintiff.  Thus, even if Cook and Gamils harbored any personal animosity against plaintiff, their alleged ill will was not the "one and only" reason for the publication of the statements in Gamils' email and plaintiff cannot, therefore, overcome the qualified privilege.

Nonetheless, plaintiff's defamation claim against defendants Gamils and Cook survives under actual malice.  Plaintiff sufficiently alleges that the statements in Gamils' email, which was sent at the direction of Cook, were false because she was not problem coded in the DOE system; her PNOB status was active despite the statements; she was approved for a social work internship within DOE; and she was never told by OPI that her ability to work within DOE was revoked. Plaintiff  has sufficiently, and at minimum, alleged reckless disregard for the truth on the part of Gamils and Cook.

As to DOE, plaintiff also sufficiently alleges facts of defamation under the doctrine of *respondeat superior*. "[A]n employer may be vicariously liable for the tortious acts of its employees only if those acts were committed in furtherance of the employer's business and within the scope of employment" (*N.X. v Cabrini Med. Ctr.*, 97 NY2d 247, 251 [2002]; *see also Summors v Port Auth. of N.Y. & N.J.*, 203 AD3d 558 [1st Dept 2022]). "Pursuant to this doctrine, the employer may be liable when the employee acts negligently or intentionally, so long as the tortious conduct is generally foreseeable and a natural incident of the employment" (*Judith M. v Sisters of Charity Hosp.*, 93 NY2d 932, 933 [1999]).  Here, plaintiff sufficiently alleges that defendants Gamils and Cook were acting within their scope of their employment when Gamils published the email containing the statements about plaintiff (NYSCEF Doc No. 2, ¶ 51).

157596/2022   KOFFEL, QUINCY vs. COOK, SABRINA ET AL
Motion No.  001

Page 12 of 19

For the foregoing reasons, defendants' motion to dismiss the defamation claim against DOE, Cook and Gamils is denied.

### B. Tortious Interference With A Contract Claim Against Miller, Gamils and Cook

In her complaint, plaintiff alleges that one year prior to Miller's deactivation of the DOE-approved vendors with whom she contracted to work with, she held approximately 14 in-school positions (NYSCEF Doc No. 2, ¶ 56). Plaintiff alleges that but for the individual defendants' actions, the vendor contracts would have been renewed and she would have continued to provide services for DOE and would have earned approximately $400,000 per year (*id.* at ¶¶ 56, 58).

"Tortious interference with contract requires the existence of a valid contract between the plaintiff and a third-party, defendant's knowledge of that contract, defendant's intentional procurement of the third-party's breach of the contract without justification, actual breach of the contract, and damages resulting therefrom" (*Lama Holding Co. v Smith Barney Inc.*, 88 NY2d 413, 424 [1996]; *see also C.H.A. Design Export (H.K.) Ltd. v Miller*, 191 AD3d 459 [1st Dept 2021]). Further, to prevail, "a plaintiff must [also] allege that the contract would not have been breached 'but for' the defendant's conduct" (*Burrowes v Combs*, 25 AD3d 370, 373 [1st Dept 2006][citation omitted]; *see also Lana & Samer, Inc. v Goldfine*, 7 AD3d 300, 301 [1st Dept 2004]).

Applying the law to the facts at hand, in her opposition papers plaintiff argues that she is asserting this claim against the individual defendants in their individual capacity only, and not against the DOE. Thus, this court dismisses the tortious interference with a contract claim against the DOE.

157596/2022   KOFFEL, QUINCY vs. COOK, SABRINA ET AL
Motion No.  001

Page 13 of 19

[* 13]

As to the individual defendants, plaintiff fails to sufficiently plead a cause of action for tortious interference with a contract. She failed to identify the specific, valid contracts she had with DOE-approved vendors at the time that the individual defendants allegedly procured a breach, and failed to allege, "in nonconclusory language, the essential terms of the parties' contract, including the specific provisions upon which liability is predicated" (*Pitcock v Kasowitz, Benson, Torres & Friedman*, LLP, 80 AD3d 453, 454 [1st Dept 2011]; *see also Influx Capital, LLC v Pershin*, 186 AD3d 1622, 1624 [2d Dept 2020]). Plaintiff alleges in general and in vague terms that she provided services to DOE throughout the years and merely states that a year prior to Miller's deactivation of the DOE approved vendors, she had approximately 14 in-school positions. In addition, "[i]n order for the plaintiff to have a cause of action for tortious interference of contract, it is axiomatic that there must be a breach of that contract by the other party" (*Jack L. Inselman & Co.,  v FNB Fin. Co.*, 41 NY2d 1078, 1080 [1977]). By failing to identify valid contracts she had with any third-party vendors, plaintiff has also failed to plead that the individual defendants actually procured a breach.

Plaintiff's tortious interference with a contract claim also fails because she does not sufficiently allege that "but for" the individual defendants' conduct, the contracts would not have been breached (*see 111 W. 57th Inv. LLC v 111 W57 Mezz Inv. LLC*, 220 AD3d 435, 436 [1st Dept 2023]; *Burrowes*, 25 AD3d at 373). Plaintiff asserts that if it were not for the defendants' actions, the contracts with DOE and the vendors would have been renewed and secured (NYSCEF Doc No. 2, ¶ 58). These statements are conclusory, however, especially when the documentary evidence conclusively shows that an investigation against plaintiff was substantiated by SCI during the relevant time (*see Carlyle, LLC v Quik Park 1633 Garage LLC*, 160 AD3d 476, 477 [1st Dept 2018] ["The relevant allegations were vague and conclusory and supported by 'mere

157596/2022   KOFFEL, QUINCY vs. COOK, SABRINA ET AL
Motion No.  001

Page 14 of 19

speculation'"][citation omitted]). This was an investigation that was conducted and concluded by an objective body, who also recommended that DOE cease doing business with plaintiff and any approved vendors with whom she was affiliated with as early as February 10, 2020. DOE thus received this SCI recommendation before Miller and Gamils made the communications at issue.

In light of the foregoing, this court need not address defendants' argument on economic justification.

### C. Tortious Interference With A Prospective Economic Advantage Against Miller, Cook, Gamils And The DOE

In her complaint, plaintiff alleges that the individual defendants intentionally communicated false and harmful information to DOE principals and other personnel for the sole purpose of retaliating against her for refusing to hire Cook's husband (NYSCEF Doc No. 2, ¶ 66). This allegedly interfered with plaintiff's relationship with DOE because she could no longer provide services to DOE schools. Plaintiff alleges that defendants' actions caused plaintiff to lose, on average, 14 to 20 projects per year and to lose average annual earnings of $400,000.

Defendants argue that the claim fails because plaintiff does not identify a business relationship with a third party. They further argue that plaintiff does not sufficiently state a claim against the individual defendants because DOE is not a third party and defendants are agents of DOE in their official capacity. They also argue that defendants' actions could not be motivated solely by malice because DOE's actions were in response to the SCI report and thus economically justified.

To prevail on a cause of action for tortious interference with prospective economic advantage, plaintiff must prove "(1) that it had a business relationship with a third party; (2) that the defendant knew of that relationship and intentionally interfered with it; (3) that the defendant

**157596/2022   KOFFEL, QUINCY vs. COOK, SABRINA ET AL**
  **Motion No.  001**

**Page 15 of 19**

acted solely out of malice or used improper or illegal means that amounted to a crime or independent tort; and (4) that the defendant's interference caused injury to the relationship with the third party" (*Amaranth LLC v J.P. Morgan Chase & Co.*, 71 AD3d 40, 47 [1st Dept 2009] [citations omitted]).

"[P]laintiff must [also] show [a] more culpable conduct on the part of the defendant[s]" (*Carvel Corp. v Noonan*, 3 NY3d 182, 190 [2004]). "The implication is that, as a general rule, the defendant's conduct must amount to a crime or an independent tort. Conduct that is not criminal or tortious will generally be 'lawful' and thus insufficiently 'culpable' to create liability for interference with prospective contracts or other nonbinding economic relations" (*id.*). If the conduct is neither criminal nor independently tortious, plaintiff cannot recover unless an exception applies (*id.*). "Such an exception has been recognized where a defendant engages in conduct 'for the sole purpose of inflicting intentional harm on plaintiffs'" (*id.* [citation omitted]). "Tortious interference with prospective economic relations [also] requires an allegation that plaintiff would have entered into an economic relationship but for the defendant's wrongful conduct" (*Vigoda v DCA Prods. Plus Inc.*, 293 AD2d 265, 266 [1st Dept 2002]).

Here, plaintiff's tortious interference with a prospective economic advantage claim fails because she does not sufficiently allege that there is a but for cause between the individual defendants' alleged wrongful actions and DOE's decision to terminate its relationship with the DOE-authorized vendors and plaintiff.

Plaintiff has not alleged criminal conduct against any defendant and does not sufficiently allege a but for cause between the defendants' alleged wrongful actions and DOE's decision to cease working with plaintiff and the DOE-authorized vendors, as such allegations are conclusory. While Gamils' October 2021 email and Miller's communication may have been a factor in DOE's

157596/2022   KOFFEL, QUINCY vs. COOK, SABRINA ET AL
Motion No.  001

Page 16 of 19

and its principals' decisions to terminate their business relationship with plaintiff and the DOE-authorized vendors, plaintiff fails to adequately plead that but for their alleged wrongful conduct (*see Gans v Wilbee Corp.*, 199 AD3d 564 [1st Dept 2021]; *Merisel, Inc. v Weinstock*, 117 AD3d 459, 460 [1st Dept 2014]), plaintiff's relationship with DOE and the vendors would have continued. Importantly, the documentary evidence shows otherwise. Further, "[h]aving failed to demonstrate that the agreements with the [third party vendors] would have continued "but for" defendants' actions [. . . ] the cause of action would also fail under the theory of tortious interference with prospective business relations" (*American Preferred Prescription v Health Mgt.*, 252 AD2d 414, 418 [1st Dept 1998]).

For all these reasons, defendants' motion to dismiss plaintiff's tortious interference with a prospective economic advantage is granted.

157596/2022   KOFFEL, QUINCY vs. COOK, SABRINA ET AL
 Motion No.  001

Page 17 of 19

17 of 19

## CONCLUSION

This court has considered the parties' remaining contentions and finds them unavailing. For all the reasons set forth herein, it is hereby:

**ORDERED** that the branch of the motion to dismiss the complaint against defendant City of New York is granted and the complaint is dismissed in its entirety against said defendant; and it is further

**ORDERED** that the branch of the motion to dismiss the complaint against defendants Sabrina Cook, Jeffrey Gamils, Jay Miller, and the New York City Department of Education is granted to the extent of dismissing the third cause of action against defendant Jay Miller and dismissing the first and second causes of action against each defendant, and the balance of the motion is denied; and it is further

**ORDERED** that defendants Sabrina Cook, Jeffrey Gamils, Jay Miller, and the New York City Department of Education shall each serve an Answer to the complaint within 20 days from the date of service of this order with written notice of entry; and it is further

**ORDERED** that counsel for the moving party must serve a copy of this order with notice of entry upon the Clerk of the Court and the Clerk of the General Clerk's Office, who are directed to mark the court's records to reflect the change in the caption herein; and it is further

157596/2022   KOFFEL, QUINCY vs. COOK, SABRINA ET AL
Motion No.  001

Page 18 of 19

18 of 19

**ORDERED** that such service upon the Clerk of the Court and the Clerk of the General Clerk's Office shall be made in accordance with the procedures set forth in the *Protocol on Courthouse and County Clerk Procedures for Electronically Filed Cases* (accessible at the "E-Filing" page on the court's website).

This is the Decision and Order of this court.

| | | | |
|---|---|---|---|
| **5/14/2024** | | | |
| **DATE** | | **J. MACHELLE SWEETING, J.S.C.** | |

| CHECK ONE: | ☐ CASE DISPOSED | **X** NON-FINAL DISPOSITION | |
| | ☐ GRANTED ☐ DENIED | ☐ GRANTED IN PART | **X** OTHER |
| APPLICATION: | ☐ SETTLE ORDER | ☐ SUBMIT ORDER | |
| CHECK IF APPROPRIATE: | ☐ INCLUDES TRANSFER/REASSIGN | ☐ FIDUCIARY APPOINTMENT | ☐ REFERENCE |

157596/2022   KOFFEL, QUINCY vs. COOK, SABRINA ET AL
Motion No.  001

Page 19 of 19

19 of 19